## CIRCUIT COURT OF THE CITY OF RICHMOND

Robert H. Holloway

v.

E. R. Carpenter Co. et al.

June 13, 1988

Case No. LK-2487-4

By JUDGE RANDALL G. JOHNSON

On October 4, 1983, plaintiff was injured while performing the plumbing installation of a new foam rubber machine at defendant E. R. Carpenter, Incorporated's manufacturing facility in the City of Richmond. At the time of his injury, plaintiff was an employee of the J. W. Bastian Company, Inc., a mechanical contracting company. Plaintiff claims that his injury was caused by the negligence of E. R. Carpenter and of Mohr & Federhaff, A.G., the manufacturer of the foam rubber machine he was installing. Carpenter has filed a plea of the Workmen's Compensation Act contending that although plaintiff was not on Carpenter's payroll at the time of his injury, he was a statutory employee within the Act, and accordingly may not pursue a personal injury action against Carpenter. The specific section of the Act relied upon by Carpenter is § 65.1-29, which provides as follows:

> When any person (in this section . . . referred to as "owner") undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section . . . referred to as "subcontractor") for the execution or performance by or under such subcontractor

of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if the workman had been immediately employed by him.

It is undisputed that Carpenter ("owner") had contracted with Bastian ("subcontractor") to perform work undertaken by Carpenter at the time of plaintiff's injury; that is, the installation of the foam rubber machine. It is also undisputed that plaintiff was a "workman employed in" such work. What is in dispute is whether the installation of the new machine was "a part of [Carpenter's] trade, business or occupation." If it was, Carpenter's plea under the Act must be sustained and plaintiff's action must be dismissed as to that defendant. If it was not, then plaintiff is not covered by the Act and may pursue his claim against Carpenter in this action.

The proper interpretation of the relevant language of § 65.1-29 has been the subject of several cases in the Supreme Court of Virginia. In *Shell Oil Co. v. Leftwich*, 212 Va. 715, 187 S.E.2d 162 (1972), the Court set out the following test in determining whether particular work was a part of an employer's (owner's) trade, business or occupation:

> [T]he test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction or transportation service. The test (except in ˋcases where the work is obviously a subcontracted fraction of a main contract) is whether this indispensable activity is, in that business, *normally* carried on through employees rather than independent contractors." 212 Va. at 722 (*quoting* Larson, *The Law of Workmen's Compensation*, Vol. 1A, § 49.12, at 872-73 (emphasis in original). *See also Burroughs v. Walmont*, 210 Va. 98, 168 S.E.2d 107 (1969); *Hipp v. Sadler*

*Materials Corp.*, 211 Va. 710, 180 S.E.2d 501 (1971).

The above test was further refined in *Bassett Furniture v. McReynolds*, 216 Va. 897, 224 S.E.2d 323 (1976):

> It clearly appears to be the purpose . . . to bring within the operation of the Compensation Act all persons engaged in any work that is a part of the trade, business or occupation of the original party who undertakes as owner, or contracts as contractor, to perform that work, and to make liable to every employe[e] engaged in that work every such owner, or contractor, and subcontractor, above such employee. But when the employe[e] reaches an employer in the ascending scale, of whose trade, business or occupation the work being performed by the employe[e] is not a part, then that employer is not liable to that employe[e] for compensation . . . . At that point [Code § 65.1-5] intervenes and the employe[e]'s right of action at common law is preserved." 216 Va. at 901-2 (*quoting Sykes v. Stone & Webster Eng. Corp.*, 186 Va. 116, 121, 41 S.E.2d 469 (1947).[1]

*Bassett* also makes it clear that whether particular work is part of an owner's trade, business, or occupation "depends upon the facts and circumstances of each case, and for that reason the question does not readily yield to categorical or absolute standards." 216 Va. at 902. The Court, however, did set forth some factors to be considered in making the subject determination. Among those factors are frequency and regularity of performance, and capacity

---

[1] Section 65.1-5 provides: "Nothing in this Act contained shall be construed to make, for the purposes of this Act, the employees of an independent contractor the employees of the person or corporation employing or contracting with such independent contractor."
Bassett and the other cases make it clear, however, that this section applies only where the work performed is *not* part of the trade, business, or occupation of the owner.

to perform. While neither of these factors, standing alone, is conclusive, they are to be considered. Indeed, in *Carmody v. F. W. Woolworth Co.*, 234 Va. 198, 361 S.E.2d 128 (1987), while reaffirming the test enunciated in *Shell Oil* and *Bassett*, the Court held that the plaintiff-worker was the statutory employee of the defendant-owner even though the owner had never engaged in, nor was anyone on its payroll qualified to perform, the work being performed by plaintiff at the time of his injury. It is necessary, then, to consider the particular facts of the case at bar.

The E. R. Carpenter Company is engaged in the manufacture of foam rubber for use in cushions, comforters, quilts, and other items. The production lines contain several machines, some of which include "ovens" where the foam rubber is actually prepared. Plaintiff was installing the pipes on such an oven at the time of his injury.

Carpenter has approximately thirty-eight employees on its payroll in its maintenance department. Some of these employees install new equipment, and some maintain existing equipment. Ovell Sessoms, vice president of Carpenter's production division, testified that most of the installation work on new machines, and practically all of the maintenance work on existing machines, is performed by Carpenter's own maintenance workers. With regard to the installation of the particular machine on which plaintiff was injured, Sessoms testified that while Carpenter's employees were fully qualified to perform such installation, a management decision was made to have the plumbing portion of the installation performed by Bastian. This was done, according to Sessoms, because the workload of the maintenance department on other projects at that particular time was such that sufficient manpower could not be devoted to installing the subject machine. Even with outside help from Bastian, however, Carpenter's own employees spent a total of 5,677.2 manhours installing the new machine. In any event, Sessoms testified that machines and ovens similar to the one involved here have been installed solely by Carpenter's employees, and that such installation is a routine part of the duties of Carpenter's maintenance department. Moreover, the entire project on which plaintiff was working was designed,

prepared, and supervised by Carpenter's employees, principally Sessoms.

Plaintiff, on the other hand, maintains that the job he was performing when he was injured is not a normal part of the function of Carpenter's maintenance department. While conceding that Carpenter's employees "assisted" in the installation of the new machine, and that such installation had actually begun prior to his arrival under the Carpenter-Bastian contract, plaintiff contends that the particular part of the installation he was performing, installing the pipes and other plumbing fixtures to the oven, is not a routine function of Carpenter's employees. Plaintiff testified that of the six or seven ovens currently at Carpenter's Richmond facility, he had personally performed the plumbing installation on all but two. He also stated that the pipes for the new machine were made of stainless steel, which is harder to work on than regular piping. With regard to whether any of Carpenter's employees could have done the job he was doing, plaintiff at first testified that no one at Carpenter was so qualified. Later, however, he named one Carpenter employee whom he felt "could have" put in the pipes.

Considering the above facts in light of the principles set forth in the cases previously discussed, the court is convinced that plaintiff was, at the time of his injury, a statutory employee of E. R. Carpenter within the meaning of Va. Code § 65.1-29. Carpenter is engaged in the business of manufacturing foam rubber. In order to manufacture foam rubber, Carpenter purchases and installs machines and ovens of the type involved in plaintiff's injury. Carpenter maintains a 38-person maintenance department to install and maintain the machines used in its production lines. While portions of the installation work have, as in the instant case, been contracted out, it is still a portion of *Carpenter's* business to install the machines. Indeed, it is hard to imagine how such installation could not be a part of Carpenter's business in light of the many manhours spent by Carpenter's employees in such

installation.[2] Moreover, plaintiff's argument that he is not a statutory employee because Carpenter's employees had never installed stainless steel pipe is directly refuted by the Supreme Court's holding in *Carmody v. F. W. Woolworth Co., supra.* In that case, plaintiff was an employee of Photo Corporation of America (PCA). In 1971, Woolworth entered into a license agreement with PCA for the taking and sale of portrait photographs at Woolworth's stores. Under the agreement, Woolworth provided PCA with a cash register; furnished janitorial service, building security, and all utilities; and expressly reserved to itself authority over sales, refunds, exchanges, and extensions of credit. The operation of the department was performed solely by PCA. The license agreement required PCA to install, maintain, and remove all equipment needed, and to furnish all materials consumed, in the operation of the portrait photograph department, and to save Woolworth harmless from any liability arising out of the operation of the department. Significantly, the evidence showed that Woolworth had never been engaged in the portrait photography business and none of its employees were trained to operate such a department. In holding that the plaintiff *was* the statutory employee of Woolworth under § 65.1-29, the Court stated:

> The appropriate inquiry is not whether Woolworth as owner was engaged in the portrait photography business or had ever been, *but whether [plaintiff's] sale of portrait photographs was a part of Woolworth's business of operating a department store.* Indeed, it may be inferred that Woolworth had no desire to engage directly in the business of taking and selling portrait photographs in any of its stores. But, as a discount department store selling a variety of goods and services, Woolworth saw a consumer demand for portrait photographs and, as a matter of commercial self-interest, elected to make it a part of its retail

---

[2] As already noted, 5,677.2 manhours were spent by Carpenter's employees in installing the subject machine. By contrast, Bastian employees, including plaintiff, spent only 380 hours on the installation.

merchandising business, albeit a part conducted through an independent contractor. 234 Va. at 205 (emphasis added).

The above holding is equally applicable here. Thus, to paraphrase, the appropriate inquiry here is not whether E. R. Carpenter is engaged in the business of installing ovens with stainless steel pipes or had ever been, but whether plaintiff's installation of such an oven is part of Carpenter's business of manufacturing foam rubber. Because Carpenter's employees were normally involved in the installation of the ovens used in its manufacturing processes, and even if they were not always involved in every single aspect of such installation, such installation was, in the court's view, unquestionably a part of Carpenter's business. Accordingly, defendant's plea must be sustained.