## CIRCUIT COURT OF THE CITY OF RICHMOND

Rose Marie Ferguson, Adm'r

v.

Reynolds Metals Co.

May 25, 1989

Case No. LM-1875-4

By JUDGE RANDALL G. JOHNSON

This case is before the court on Reynolds Metals Company's plea of the Workers' Compensation Act. Plaintiff's decedent, Herman Alphonz DeJong, was fatally injured when he fell through the roof of Reynolds's Bellwood Reclamation Plant in Chesterfield County. At the time of his death, DeJong was an employee of General Sheet Metal Works, Inc., and was performing sheetmetal work at the Reynolds plant under a contract between Reynolds and General. It is Reynolds's position that DeJong's performance of such work made him the statutory employee of Reynolds, thus barring any recovery outside of the Act.

Va. Code Section 65.1-29 provides:

When any person (in this section . . . referred to as "owner") undertakes to perform or execute any work which is a part of his trade, business, or occupation and contracts with any other person (in this section . . . referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under

this Act which he would have been liable to pay if the workman had been immediately employed by him.

In the case at bar, Reynolds (the "owner") contracted with General (the "subcontractor") to perform work undertaken by Reynolds. DeJong was a "workman employed" in that work. The question which must be decided, then, is whether the work being performed by General was a part of the "trade, business, or occupation" of Reynolds.

In deciding this question, the court is bound by the Supreme Court cases of *Shell Oil Co. v. Leftwich*, 212 Va. 715, 187 S.E.2d 162 (1972), and *Bassett Furniture v. McReynolds*, 216 Va. 897, 224 S.E.2d 323 (1976). In *Shell Oil*, the Court stated:

> [T]he test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction, or transportation service. The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether this indispensable activity is, in that business, *normally* carried on through employees rather than independent contractors. 212 Va. at 722 (*quoting* Larson, *The Law of Workmen's Compensation*, Vol. 1A, Section 49.12, at 872-73 (emphasis in original). *See also Burroughs v. Walmont*, 210 Va. 98, 168 S.E.2d 107 (1969); *Hipp v. Sadler Materials Corp.*, 211 Va. 710, 180 S.E.2d 501 (1971).

In *Bassett*, the Court amplified the above test by stating:

> Whether the work is such a part [of the owner's trade, business, or occupation] depends upon the facts and circumstances in each case, and for that reason, the question does not readily yield to categorical or absolute standards .
> . . .

> Frequency and regularity of performance are factors to be considered in determining whether work is "normally carried on through employees" . . . . Mere capacity to perform, standing alone, is not determinative. Nor is performance which is a *de minimis* part of the total business operation. 216 Va. at 902-903 (citations omitted).

Applying these principles to the case at bar, the court concludes that DeJong was the statutory employee of Reynolds.

At the time of DeJong's death, Reynolds's Bellwood Reclamation Plant employed forty-two workers. Twelve of those workers, nearly 30% of the total, were maintenance employees. Those maintenance workers, according to all of the witnesses, were fully able to repair and replace the sheetmetal walls and roofing at the plant, the work being performed by General Sheetmetal, DeJong's employer, at the time of DeJong's death. Indeed, Mike Strickland, General's field supervisor, testified that General did no sheetmetal work for Reynolds which Reynolds's employees did not also do.

Furthermore, the testimony showed that Reynolds had all of the special equipment necessary to do the work being performed by General, with the possible exception of a crane for lifting the roofing panels to the roof. The testimony further showed, however, that Reynolds had forklifts which could reach at least a portion of the roof and that, in any event, a crane could be rented if the forklifts were not enough.

The testimony presented at the hearing also showed that sheetmetal repair and replacement were routinely performed by Reynolds's employees. It was being performed by a subcontractor on this occasion because of management's decision that Reynolds's employees were needed to perform other tasks during the time when the sheetmetal work was to be done and that it was more efficient to use a subcontractor than to pull Reynolds's employees from those other tasks.

Finally, Reynolds's plant supervisor testified that more sheetmetal jobs at the plant were performed by Reynolds's employees than were performed by outside contrac-

tors. Thus, while *Bassett* holds that the factors there mentioned -- frequency and regularity of work, capacity to perform, and whether the questioned work is more than merely a *de minimis* part of the owner's total business operation -- are not, each standing alone, sufficient to establish a worker's status as a statutory employee, those factors in combination mandate such a finding. Such a finding is mandated here.

Plaintiff attempts to avoid a finding that DeJong was Reynolds's statutory employee by drawing an analogy between the work performed in *Bassett* and the work performed here. In *Bassett*, the owner hired a subcontractor to install a conveyor system. The Supreme Court held that the injured worker was not Bassett's statutory employee, even though Bassett's employees had "the capability" and had built new conveyors in the past. 216 Va. at 897. Among the factors relied upon by the Court in making its decision was the size of the undertaking involved; that is, that "Bassett had never undertaken anything of this magnitude." *Id*. Plaintiff here seizes upon that finding to argue that the work being performed by General Sheetmetal at Reynolds was also of such a magnitude that it was not part of Reynolds's trade, business, or occupation. That analogy is not valid.

While it is true that the Court in *Bassett* pointed out that the work being performed was of a larger scope than any work Bassett's employees had ever done, the Court also emphasized that such work was *construction* work as opposed to maintenance and repair. Because "construction work is typically outside the custom of the trade, and manufacturers who use their employees for such work generally do so only infrequently and irregularly" (216 Va. at 897), the Court had little difficulty in holding that such work was not part of Bassett's trade, business, or occupation.

By contrast, the evidence in the case at bar clearly shows that the work being performed by General Sheetmetal at the time of DeJong's death was maintenance and repair work. No construction or installation of new facilities or structures was involved. Rather, a portion of the existing roofing and siding was being replaced. Moreover, the size of the job was less than the size of projects which on other occasions had been performed by Reynolds's employees. Mr. Garrett, the general maintenance superinten-

dent, testified without contradiction that while the siding being replaced by General Sheetmetal covered an area twenty-four feet by four feet, Reynolds's employees had replaced siding covering an area twenty-four feet by eight feet. He also testified, again without contradiction, that the total area of the roof replaced by General was approximately the same as the area previously replaced by employees of Reynolds. These facts are significantly different from those found in *Bassett* and require a different conclusion here.