# CIRCUIT COURT OF THE CITY OF WINCHESTER

Lawrence R. Baker

v.

Rubbermaid Commercial
Products, Inc.

February 4, 1993

Case No. (Law) 92–87

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on January 26, 1993, for oral argument on the Defendant's plea to jurisdiction based upon Defendant's assertion that it is the statutory employer of the Plaintiff and that the Plaintiff's exclusive remedy is under the Virginia Workers' Compenstion Act. The Defendant had previously filed a memorandum of authorities. Jerry O. Talton, Esq., appeared for the Plaintiff, and Jack A. Robbins, Jr., Esq., appeared for the Defendant. It was agreed that the factual findings made by the Court as a result of the hearing on September 4, 1991, in the case of *Lawrence R. Baker v. Rubbermaid Commercial Products, Inc.*, Winchester Law No. 88–14, which was previously nonsuited by the Plaintiff would apply to the Court's ruling on the plea. Having taken the matter under consideration, the Court now makes the following decision.

## I. *Findings of Fact*

The following Findings of Fact are based on the *ore tenus* hearing held September 4, 1991, in Winchester Law No. 88–14.

Plaintiff filed this action for injuries which he received while working on the premises of Rubbermaid on February 14, 1986, alleging negligence of Rubbermaid or its employees or agents. Prior to commencing this action, Plaintiff filed for and has received benefits under

the Virginia Workers' Compensation Act for the same injuries for which he now seeks recovery in this case.

Rubbermaid maintains and operates a manufacturing facility in Winchester, Virginia, in which it manufactures plastic products, and its manufacturing equipment requires high voltage electric service to its plant.

At the time of the accident, Plaintiff was the immediate employee of S & S Electric Company and was engaged in a switchout procedure involving a high voltage transformer used to supply electricity to the manufacturing machinery of Rubbermaid. The transformer was one of several that were being replaced over a period of time by S & S Electric Company as part of their continuing relationship with Rubbermaid.

At the time complained of in the Motion for Judgment, Rubbermaid had a maintenance department employing approximately fifty-two people. A number of these employees were control electronics troubleshooters whose responsibility was to maintain the continuous operation of the production machines of Rubbermaid.

The switch-out of the high voltage transformer in question was being performed on a 9 foot 6 inch precast concrete mezzanine. This mezzanine measured approximately 90 feet by 50 feet, and housed on it were seven step-down transformers, one of which was being prepared for a switch-out procedure at the time of the injury complained of in the Motion for Judgment.

S & S Electric has had an ongoing relationship with Rubbermaid since at least the early 1980's. Since that time, S & S has had on the premises of Rubbermaid during its operating hours a minimum of two employees of S & S, an electrician plus an electrician's helper. Rubbermaid has no licensed electricians on its staff. S & S performs all repairs and maintenance on the electrical system of Rubbermaid to include such simple routine maintenance as light bulb replacement.

All repairs to the electrical system of Rubbermaid performed by S & S are done through purchase orders.

S & S does not routinely perform electrical work on the actual production machinery of Rubbermaid; that work is performed by the Rubbermaid maintenance employees or other vendors with whom Rubbermaid contracts.

The switch-out procedure being performed on the Rubbermaid transformers at the time of the accident did not involve Rubbermaid em-

ployees directly other than Mr. Sankovitch who was generally coordinating the work.

Since the early 1980's, S & S Electric has maintained an office cubicle and a telephone on the premises of Rubbermaid's plant in Winchester, Virginia.

## II. *Conclusions of Law*

Construction and major maintenance activities by an independent contractor on the owner's property provide fertile ground for litigation in third party actions such as this. Va. Code § 65.2–302 defines a statutory employer as follows:

> When any person (referred to in this section as "owner") undertakes to perform or execute any work which is part of his trade, business or occupation and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.

As the Supreme Court observed in *Nichols v. VVKR*, 241 Va. 516, 519, 403 S.E.2d 698 (1991), in ruling that the "[N]othing in this record supports the conclusion (of the trial court) that construction or rehabilitation of a transportation/retail facility is the trade business or occupation of providing mass transportation services":

> The dispositive legal principle here is well established: Contractors, subcontractors, and all workers who are engaged in the trade, business or occupation of the owner of a project are deemed to be statutory fellow employees. The remedy for any injuries suffered by one of them as a result of the alleged negligence of another, while engaged in a trade, business or occupation of the owner, is limited to that available under the Workers' Compensation Act.

Unfortunately, there are endless permutations in the factual situations upon which the courts are asked to rule in these cases, and, although the courts have developed various tests to assist in that determination, the tests provide only a "corollary guide, sometimes use-

ful, but not indispensable, in applying the literal language of the statutes to the facts in a particular case." *Cinnamon v. International Business Machines*, 238 Va. 471, 478, 384 S.E.2d 618 (1989). In *Cinnamon*, IBM was constructing a new plant which was obviously necessary for its business, but the Court noted that, as a general rule, several trades involved in the construction work were not part of the business of manufacturing products for sale, and therefore, the Court ruled that the contractor's employees were not statutory employees of IBM, relying upon *Bassett Furniture v. McReynolds*, 216 Va. 897, 224 S.E.2d 323 (1976), in which the Supreme Court held that the construction of a conveyor system was not part of the business of manufacturing furniture.

In *McCormick v. Miller & Long Constr., Inc.*, 26 Va. Cir. 466, 470–71 (Fairfax 1990), the Circuit Court of Fairfax County reviewed the factors applied by the courts in determining whether an owner is a statutory employer and observed that:

> The two Virginia cases which probably give the best insight into the factors which render an owner a statutory employer are *Bassett Furniture, Inc. v. McReynolds*, 216 Va. 897 (1976), and *Cinnamon v. International Business Machines Corp.*, 238 Va. 471 (1989). In *Bassett*, McReynolds, an employee of Industrial Air, was injured when he fell through a hole in a floor cut to accommodate a conveyor system Industrial Air was installing in Bassett's Virginia plant. *Bassett*, 216 Va. at 898. The jurisdictional issue was whether Bassett, the owner, was the statutory employer of McReynolds, barring McReynolds' common law tort claim against Bassett. *Id.* at 899. The court found that an owner acting as its own general contractor and contracting with independent contractors did not automatically become the statutory employer "unless the work performed by the independent contractor 'is part of [the owner's] trade, business or occupation'." *Id.* at 902. Instead, the Court applied the test used in *Shell Oil Co. v. Leftwich*, which states:
> "[T]he test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically all repair, construction or transportation service. The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether this

indispensable activity is, in that business, normally carried on through employees rather than independent contractors." (Emphasis supplied.) 212 Va. 715, 722 (1972).

Factors to be considered in determining whether work is normally carried on through employees include: the frequency and regularity of performance of this task by the supposed statutory employer; the party's capacity to perform the activity, *see, Holt v. Bowie*, 343 F. Supp. 962 (W.D. Va. 1972); and whether the performed activity is a *de minimis* part of the total business operation, *see, Sun Oil Co. v. Lawrence*, 213 Va. 596 (1973).

Performance of major maintenance or renovation presents a more subtle question than does the construction of an entire new production facility because nearly all owners are engaged in some facet of maintenance as a necessary incident of their business, whereas few of them are actually engaged in the overall construction of new facilities. In *Ferguson v. Reynolds Metals Co.*, 16 Va. Cir. 141 (Richmond 1988), Plaintiff's decedent was an employee of the General Sheet Metal Works which was performing sheet metal work at the Reynolds plant under a contract between Reynolds and General. At the time of the employee's death, Reynolds employed at the facility in question twelve maintenance employees who the Court noted "were fully able to repair and replace the sheet metal walls and roofing at the plant, the work being performed by General Sheet Metal . . . ." The Court noted that the work was maintenance and repair work, not construction of new facilities or structures and was work of a type "which on other occasions had been performed by Reynolds' employees." *Id.* at 144.

In *Holloway v. E. R. Carpenter Co.*, 12 Va. Cir. 293 (Richmond 1988), the Plaintiff was injured while performing the plumbing installation for a new foam rubber machine at the Defendant's manufacturing facility. In this case, the Court noted Carpenter had thirty-eight maintenance employees, some of whom installed new equipment and maintained the existing equipment. The evidence showed that most of the installation work was on new machines and that all the maintenance work on existing machines was performed by the Defendant's own maintenance workers but that management had made a decision to have the plumbing portion of the installation contracted out in this particular case, and on these facts, the Court held that the Plaintiff was a statutory employee because "Carpenter's employees were normally

involved in the installation of ovens used in its manufacturing processes, and even if they were not always involved in every single aspect of such installation, such installation was, and in the Court's view, unquestionably a part of Carpenter's business. Accordingly, Defendant's plea must be sustained." *Id.* at 299.

In the instant case, Plaintiff was injured while engaged in a switch-out procedure involving a high voltage transformer used to power the manufacturing machinery of Rubbermaid. Transformers are not directly used in Rubbermaid's business but are only incidental to its utilization of manufacturing equipment which demands a high voltage electric service. Rubbermaid does not perform even routine electrical work at its plant, except on its actual manufacturing equipment, but rather has relied upon S & S, the Plaintiff's employer to perform the electrical work on the plant electrical systems which supply its production equipment. The switch-out of the high voltage transformer in question must be performed by a licensed electrician, and Rubbermaid has no licensed electricians on its staff. Therefore, it did not have the capacity to do the work in question. Moreover, the switch-out of the transformers is not a routine maintenance function akin to routine repairs of the electrical system or production facilities of Rubbermaid as the courts were confronted with in *Ferguson* and *Holloway, supra.* The work was not routine maintenance on the plant's electrical system, which would be analogous to the routine janitorial cleaning services performed by a contractor for the owner which would bring such contractor's employees within the umbrella of the statutory employer doctrine. *See, Stiller v. Jefferson Corp.,* 10 Va. Cir. 145 (Alexandria 1987) (contractor's employees performing routine janitorial services for hospital were statutory employees of the hospital).

Rubbermaid did not have the actual capacity to perform the activity. The activity was a *de minimis* incident of Rubbermaid's total business operation, not an integral part of it. The replacement of high voltage transformers is not a routine part of Rubbermaid's business. Therefore, Plaintiff was not engaged in Rubbermaid's business at the time of the accident, rather he was engaged in a switch-out procedure that ordinarily would be performed by an independent contractor as opposed to an employee of Rubbermaid incident to its regular business.

## III. *Decision*

For the foregoing reasons, the plea to jurisdiction based upon the Virginia Workers' Compensation Act is denied.