**Katie H. McCOTTER, Plaintiff,**

v.

**SMITHFIELD PACKING CO., INC., Defendant.**

**Civ. A. No. 2:93cv953.**

United States District Court, E.D. Virginia, Norfolk Division.

April 18, 1994.

Joseph Anthony Gawrys, Vandeventer, Black, Meredith & Martin, Norfolk, VA, for plaintiff.

Timothy Patrick Murphy, William W. Nexsen, Stackhouse, Rowe & Smith, Norfolk, VA, for defendant.

## OPINION AND ORDER

DOUMAR, District Judge.

This is a common law negligence action brought by plaintiff, Katie H. McCotter, a North Carolina resident, against defendant, Smithfield Packing Co. ("Smithfield"), a Virginia resident, for injuries McCotter sustained while performing her duties as a federal food inspector at Smithfield's meat processing plant in Virginia. Presently before the Court is Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction pur-

suant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). The issue raised by the motion is whether Smithfield is McCotter's statutory employer under the Virginia Workers' Compensation Act ("VWCA") and therefore entitled to assert the exclusivity provision of that statute to bar McCotter from bringing this personal injury action.

The Court conducted an evidentiary hearing concerning food inspection at Smithfield's plant and the nature of McCotter's duties. Additionally, the present issue has been fully briefed and argued. Accordingly, this matter is ripe for disposition by the Court.

For the reasons stated below, this Court finds that Smithfield is not the statutory employer of McCotter and DENIES Smithfield's Motion to Dismiss.

## I.  Facts

McCotter is a food inspector employed by the United States Department of Agriculture. Smithfield is a food processing facility which produces pork product for public sale and consumption. On average, 8,500 hogs per day are slaughtered and inspected at Smithfield.

Federal law requires that federal food inspectors perform antemortem and postmortem inspections on the hogs brought into the plant to check for signs of disease. 21 U.S.C. § 603. Thirteen federal food inspectors are assigned to Smithfield. Seven of these inspectors are assigned to Smithfield's "kill floor," where hogs are killed, bled, and inspected for diseases. Smithfield employees assigned to the kill floor knock the hogs unconscious, hang them from their feet on a conveyor belt, "stick" them for bleeding, and slice them open for inspection before the federal inspectors internally examine the hogs. The head inspectors visually inspect the entire carcass with attention to the lymph nodes for signs of disease, such as hemorrhages, tumors, or tuberculosis. The visceral inspectors visually inspect and palpitate the internal organs which have been removed from the hog. The rail inspectors observe the carcass with special attention to the kidneys, which remain in the carcass during this stage of processing.

Each federal inspector on the kill floor has the authority to "tag" diseased or contaminated hogs and have them removed from the production line for further inspection. The inspector's decision to remove a hog can be overruled by her federally employed supervisor but not a Smithfield employee. The tasks assigned to the head, visceral, and rail inspectors can not be delegated to Smithfield employees.

The federal government hires its inspectors and trains them.[1] The federal government assigns food inspectors to particular processing facilities. The federal government also generally sets the working hours of inspectors assigned to the kill floor at Smithfield—6:30 a.m. until 3:30 p.m.—and pays the food inspectors their regular salaries. When Smithfield's production requires that the federal inspectors work overtime, Smithfield is required to reimburse the federal government for the overtime pay earned by the inspectors.

A total of 150 Smithfield employees work on the kill floor. As noted above, Smithfield employees assist the federal food inspectors by placing hogs on the conveyor line and cutting the hogs for inspection. Some Smithfield employees perform quality control, which basically requires them to inspect the hogs to ensure that they have been properly processed. Smithfield's quality control employees check for flaws in processing which may affect the taste or appearance of the product but do not check for tumors, lesions, or signs of disease as such. Only one quality control employee is stationed on the kill floor. Smithfield's quality control inspectors can remove hogs from the line if they opine that they are adulterated or inferior product.

Additionally, Smithfield employees administer programs which are federally mandated and which must first earn the approval of the United States Department of Agriculture. These programs, which are not performed on the kill floor, include boneless meat reinspec-

1.  Federal food inspectors receive both on-the-job training and classroom training—two three week sessions—from the federal government. The federal government requires that its inspectors have a high school diploma and three years experience at a meat packing plant or on a farm.

tion, spray chilling, insecticide and rodent control, and vaccum packed sliced bacon inspection. Def. Exs. 6–10. Although these Smithfield employees would reject as inferior any pork containing obvious diseases, no hog can be processed without examination and approval by the federal food inspectors assigned to the kill floor.

McCotter has worked at the Smithfield plant and other meat processing facilities in Virginia for 10–12 years. McCotter's records indicate that from January 1988 until September, 1991, McCotter was assigned exclusively to the Smithfield and Gwaltney facilities, which are located across the street from each other and are owned and operated by Smithfield. Pl.Ex. 4a.

On September 24, 1991, McCotter traveled to Smithfield's premises to conduct inspections. While McCotter was working at her official duties on the kill floor, a hog carcass fell from the moving rail conveyor and struck McCotter, allegedly causing injuries to her head, neck, back, arms, and shoulders. McCotter seeks $5,000,000 for injuries sustained as a result of the incident.

Smithfield claims that it is McCotter's "statutory employer" under the VWCA, Virginia Code § 65.2–302, that the VWCA therefore bars McCotter's suit, and that this Court is precluded from asserting subject matter jurisdiction over the suit.

■ McCotter opposes Smithfield's motion by claiming that, since she is a federal employee, the Federal Employees' Compensation Act ("FECA") exempts her from the VWCA. Alternatively, McCotter claims that Smithfield is not her statutory employer because she was not engaged in the "trade, business, or occupation" of Smithfield at the time she sustained her injuries.[2]

## II. Analysis

■ When an employee in Virginia is injured in the performance of her duties for her employer, the VWCA provides her sole and exclusive remedy against the employer. Virginia Code § 65.2–307. *Rasnick v. Pittston Co., Inc.*, 237 Va. 658, 659–60, 379 S.E.2d 353, 354 (1989). The VWCA benefits both parties: the employee may recover without defending against contributory negligence, assumption of risk, or the fellow servant rule, *see id.*, and the employer may invoke the exclusivity provision of the VWCA to bar the employee's common law tort claims.

The issue in this case is whether a private owner of a meat processing facility is entitled to the benefit of the exclusivity provision against a United States Department of Agriculture food inspector who is injured while performing inspections at the owner's facility.

### A. FECA and the VWCA

McCotter first contends that the VWCA does not bar her suit because federal employees are exempt from the coverage of the VWCA. FECA provides compensation for federal employees for disability and death arising out of injuries sustained during the performance of their duties. FECA is the employee's exclusive remedy against the United States for work related injuries pursuant to 5 U.S.C. § 8116(c), which provides, in relevant part:

> The liability of the United States or an instrumentality thereof under this sub-

2. Although the facts of this case could give rise to a "borrowed servant" analysis, the parties' briefs are exclusively devoted to the issue of how the Court may deem an independent contractor a statutory employee. It is well established that the borrowed servant doctrine applies to state and federal workers' compensation acts. *See, e.g., Metro Mach. Corp. v. Mizenko*, 244 Va. 78, 81–82, 419 S.E.2d 632, 634 (1992); *Huff v. Marine Tank Testing Corp.*, 631 F.2d 1140, 1144 (4th Cir.1980); *Ideal Laundry v. Williams*, 153 Va. 176, 179, 149 S.E. 479, 480 (1929). Where the Court finds that the borrowed servant has become the employee of the borrowing entity and the borrowing entity has participated in the state's workers' compensation scheme, workers' compensation is the employee's exclusive remedy against that entity for disabilities or death suffered by that employee. *Metro Mach.*, 419 S.E.2d at 634. However, in the present case, the Court would not find that McCotter was the employee of Smithfield under the borrowed servant doctrine, as McCotter was hired, paid, supervised, and controlled by the federal government, not Smithfield. *See id.* at 635 (citing *Gaudet v. Exxon Corp.*, 562 F.2d 351, 355 (5th Cir.1977); *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312–13 (5th Cir.1969).

chapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages form the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute.

█ The Court finds that the statute does not exempt federal employees from the VWCA. The statute merely shields the United States from liability arising out of the death of a federal employee in any type of proceeding, including a proceeding brought under a state workers' compensation act such as the VWCA. The statute has no effect on the liability of a third party who asserts the exclusivity of a state workers' compensation scheme to shield it from liability. Moreover, the VWCA does not exempt federal employees from its definition of "employees." [3] Thus, plaintiff presents no authority supporting her position that the above section or any section of FECA exempts federal employees from the VWCA or that the VWCA itself exempts federal employees from its coverage.

### B. *The VWCA and Statutory Employers*

█ Smithfield contends that although McCotter is a federal employee, she is a statutory employee of Smithfield. The statutory employer-employee relationship is created by the VWCA, Virginia Code § 65.2–302 which reads, in relevant part:

Statutory employer.—A. When any person (referred to in this section as "owner") undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.

As noted above, liability under the VWCA entitles the owner to the exclusivity of the remedy provided by the VWCA and the concomitant bar against a common law tort action brought by an employee for work-related injuries or death.

█ The purpose of the statute and its predecessors, Va.Code §§ 65.1–29 to 65.1–31, is to expand the popular definition of "employer" in order to bring within the VWCA independent contractors and subcontractors who are engaged in work that is part of the trade, business, or occupation of the owner. *See Southeastern Tidewater Area Manpower Auth. v. Coley,* 221 Va. 859, 275 S.E.2d 589 (1981). The VWCA is "highly remedial" and therefore "should be liberally construed to advance its purpose." *Henderson v. Central Telephone Co. of Va.,* 233 Va. 377, 355 S.E.2d 596, 599 (1987) (citing *Fauver v. Bell,* 192 Va. 518, 522, 65 S.E.2d 575, 577 (1977)).

█ To determine whether an owner is a statutory employer, the Court first must find whether the worker is performing the trade, business, or occupation of the owner. In a private enterprise, an owner is able to define the scope of his own business. Therefore, in the context of a private enterprise, the Court must determine whether the task is one which is usually performed by the employees of the owner as opposed to independent contractors. *See Shell Oil Co. v. Leftwich,* 212

---

**3.** Plaintiff claims that because the VWCA exempts the wages of federal employees from the calculation of the "average weekly wage of the Commonwealth,", *see* Va.Code § 65.2–500, federal employees are exempt under the VWCA. This Court disagrees. The provision expresses no intention on the part of the legislature to exempt federal employees from the coverage of the VWCA. Furthermore, the VWCA specifically lists persons who are excluded from the definition of "employee" under the statute—including, among others, certain elected officers of the Commonwealth and municipalities, certain real estate brokers, taxicab drivers, casual employees, domestic servants, farm and horticultural laborers, and certain employees of common carriers—but does not specifically exclude federal employees. Va.Code § 65.2–101.

Va. 715, 187 S.E.2d 162, 167 (1972) (quoting Larson, The law of Workmen's Compensation, Vol.1A, § 49.12, pp. 872, 873); *Henderson*, 355 S.E.2d at 599–600; *Cinnamon v. Int'l Business Machines*, 238 Va. 471, 384 S.E.2d 618, 622 (1989). In *Shell Oil*, the Court stated that:

> [T]he test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction or transportation service. The test ... is whether this indispensable activity is, in that business, normally carried on through employees rather than independent contractors.

212 Va. 715 at 722, 187 S.E.2d 162 at 167 (quoting Larson, Vol. 1A at § 49.12, pp. 872, 873). Thus, in *Cinnamon*, 238 Va. at 479, 384 S.E.2d at 622, the court held that IBM was not the statutory employer of a contractor's employee injured during construction of a building for IBM, as IBM employees had never engaged in construction. *See also Barber v. Loews Theatres, Inc.*, 355 F.Supp. 136, 137–38 (W.D.Va.1972) (holding that where tobacco company never sent out its own trucks to pick up tobacco from suppliers, tobacco company was not statutory employer of employees of the trucking company hired to make the pick-ups).

However, the Virginia Supreme Court has announced a slightly different test where the owner is a government entity or a public utility and the owner is required by statute and regulation to perform a particular task. In these contexts, the court has found that the individual performing the mandated task was engaged in the trade, business, or occupation of the employer even when the owner always hires independent contractors to perform the mandated task. *Henderson*, 355 S.E.2d at 598–600. *See also Williams v. Gresham Co.*, 201 Va. 457, 111 S.E.2d 498, 499–503 (1959). In *Henderson*, a phone company was mandated by statute and regulations to provide "necessary equipment and plant facilities," so the court held that an employee of an independent contractor who was installing central office equipment was performing a task within the phone compa-

ny's "trade, business, or occupation," regardless of the frequency with which the phone company's employees performed the task. *Henderson*, 355 S.E.2d at 599–601 ("it is not simply what [public utilities and government entities] do that defines their trade, business, or occupation. What they are supposed to do is also a determinant."). However, the Virginia Supreme Court has not applied this rule where the business is precluded by statute from hiring employees or contractors to perform the mandated task.

Though the Virginia Supreme Court has broadly interpreted the VWCA's statutory employer provision, this Court does not find that Smithfield is McCotter's statutory employer. Smithfield did not contract for McCotter's services; McCotter was hired, trained, and placed at the Smithfield plant by the federal government pursuant to federal law requiring food inspectors at meat packing facilities. McCotter has been paid by the federal government, supervised exclusively by federal employees, and can be fired only by the federal government. Smithfield has no control over the manner in which McCotter performed her duties. The decisions made by McCotter are reviewable only by federal supervisors and in no way is she or her superiors subject to review or approval by Smithfield.

In contrast to the facts of *Henderson*, Smithfield is precluded by federal law from hiring employees or contractors to replace the federally placed food inspectors such as McCotter. McCotter's job must be performed by federal employees and can not be delegated to Smithfield employees. The business of government inspectors is to protect the public from contamination of all types while the function of Smithfield's quality control personnel is to insure that the product is not obviously defective. The Smithfield personnel are there to protect the company's economic well-being while the government personnel are there to protect the public safety. Each is guided and directed by totally different aims than the other. The business of one can not be the business of the other as the goals of each are in no way compatible.

In sum, McCotter does not perform functions which are or could be performed by Smithfield employees. McCotter performs duties within the exclusive authority and under the exclusive control and supervision of the federal government. McCotter did not perform the "trade, business, or occupation" of Smithfield, and Smithfield is not McCotter's statutory employer. Therefore, this suit is not barred by the VWCA.

### III. *Conclusion*

For the reasons stated above, this Court concludes that defendant is not the statutory employer of plaintiff. Plaintiff is not barred by the VWCA from bringing this suit, and this Court is not thereby precluded from asserting jurisdiction over this case. Accordingly, Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is DENIED.

IT IS SO ORDERED.