**Ivanhoe NELSON, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

**No. CIV.A. 3:00CV00059.**

United States District Court, W.D. Virginia, Charlottesville Division.

Feb. 28, 2002.

Lindsay Gordon Dorrier, Jr., Scottsville, VA, for Plaintiff.

Julie C. Dudley, U.S. Attorney's Office, Roanoke, VA, for Defendant.

### MEMORANDUM OPINION

MICHAEL, Senior District Judge.

By Order dated January, 18, 2001, this court referred the above-captioned case to the presiding United States Magistrate Judge, to conduct proceedings appropriate for the resolution of dispositive pretrial matters and to submit to this court proposed findings of fact and recommendations for their resolution pursuant to 28 U.S.C. § 636(b)(1)(B). On July 6, 2001, the Magistrate Judge filed a Report and Recommendation suggesting that this court grant the defendant's May 18, 2001 motion for summary judgement and dis-

miss the plaintiff's action from the docket of the court.

The plaintiff filed an objection to the Report and Recommendation on July 13, 2001, and the defendant filed a response to the objection on July 27, 2001. Under § 636(b)(1)(C), this court "shall make a de novo review determination of those portions of the report...to which the objection is made." After a thorough examination of the plaintiff's objection, the supporting memoranda, the applicable law, the documented record, and the Report and Recommendation, the court agrees with the reasoning of the Magistrate Judge and shall dismiss the plaintiff's action in its entirety.

## I.

The plaintiff, Ivanhoe Nelson, had been employed since 1982 as a truck driver for McCann Delivery Service ("McCann"), a contract mail hauler for the United States Postal Service ("U.S.P.S."). McCann's contract with U.S.P.S. provides that, in addition to transporting all mail tendered under the contract, McCann drivers "shall see that loads are properly distributed and secured and that doors, tailgates, and other equipment are fastened to insure safe operations." (PS Form 7407, July 1992, ¶ 5(c)). The plaintiff's specific duties required him to deliver mail loaded at the main post office in Charlottesville, Virginia to post offices in Fisherville and Lyndhurst, Virginia.

The cargo area of the truck driven by Nelson was essentially an enclosed box, with access available only through the rear door located approximately four feet above the ground. Because the truck lacked any mechanical means of loading or unloading the truck, unloading had to be done manually from the truck bed to ground level where there was no loading dock at a destination. In addition, Nelson's truck was not equipped with interior lighting, and thus the only lighting available was that which came from outside sources at a delivery location.

The plaintiff's usual schedule was to proceed from Charlottesville to Fisherville and then to Lyndhurst. The available light and loading mechanisms at these locations varied. The Charlottesville office had a well lighted dock. The Fisherville office had minimal lighting and no loading dock, but was outfitted with a scissors-jack consisting of "a platform about 3 or 4 feet deep which would raise to the level of the truck bed, be loaded, and then lower to the floor level for taking wheeled containers into the post office." (Pl's Opp'n to Summ. J. at 2.) The Lyndhurst office had neither a mechanical loading device nor an available light source.

On September 29, 1997, at approximately 2:30 a.m., the plaintiff arrived at work in Charlottesville and joined postal employees in the loading of that day's mail into the truck. The plaintiff complained to the postal employees about two unusual aspects of that day's load: (1) the high volume of heavy, glossy third-class mail to be delivered to Lyndhurst, and (2) the fact that the containers holding the third-class mail lacked lids. Nelson and the postal employees nevertheless loaded the third-class mail containers into tall metal cages near the front of the truck, and Nelson embarked on his usual delivery route.

At 3:00 a.m., Nelson arrived at the Fisherville office and, without the assistance of U.S.P.S. personnel, unloaded the mail designated for that facility. Due to the lack of lighting at the Lyndhurst office, Nelson customarily made use of the light and loading devices available at the Fisherville facility to reposition the Lyndhurst mail, generally located in the rear of the truck's cargo area, in order to make it easier to unload upon arrival in Lyndhurst. However, in the process of repositioning the

large containers of third-class mail designated for Lyndhurst, Nelson boxed himself into a corner of the cargo area, where the only way to exit was to climb over the stacks of third class mail. As Nelson attempted to exit, he rolled over the stacked mail, fell out of the truck, and landed on the scissors jack platform, allegedly injuring his right elbow, right shoulder, and right knee.

On the basis of these injuries, Nelson applied for and received compensation under the Virginia Worker's Compensation Act (VWCA), VA. CODE ANN. § 65.2–100, *et seq.* (Michie 1995 & Supp.2000). In addition, Nelson filed a claim against the U.S.P.S. under the Federal Tort Claims Act (FTCA), which claim was denied. Nelson then filed the current action on July 5, 2000, and by his May 14, 2001 Amended Complaint, asserts jurisdiction of the federal courts under the Postal Reorganization Act of 1970(PRA), 39 U.S.C. 401, *et seq.* The plaintiff seeks compensatory damages and injunctive relief "requiring the defendant to follow its regulations with respect to safety and the proper sealing and securing of mail containers." (Am. Compl. at 2.)

## II.

■ Because the defendant is attacking the court's subject matter jurisdiction based on the exclusivity provision of the VWCA, the appropriate motion is a motion to dismiss under Fed.R.Civ.P. 12(b)(1), and not a motion for summary judgement. *See Peavler v. Mitchell & Scott Mach. Co., Inc.,* 638 N.E.2d 879, 880 (Ind.Ct.App. 1994). "A motion to dismiss for lack of subject matter jurisdiction presents a threshold question concerning a court's power to act." *Id.* The plaintiff has the burden of proving that subject matter jurisdiction exists, and when a defendant challenges subject matter jurisdiction "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgement." *Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991). A Rule 12(b)(1) motion to dismiss should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

## III.

The Magistrate Judge recommended that the court dismiss the plaintiff's action based on his finding that the VWCA provides the exclusive remedy for Nelson's injuries. Nelson objects to this finding on the following bases: (1) Nelson's claim relating to the loss of income from secondary employment is outside the jurisdiction of the VWCA; and (2) the U.S.P.S. is an "other party," rather than a statutory employer, under the VWCA and thus the plaintiff's remedies are not limited to those available under the VWCA. The court will address each of these objections in turn.

### A. Plaintiff's Secondary Employment

■ In addition to his primary employment with McCann, Nelson states that, at the time of the accident, he had arranged to earn money on the side by performing landscaping work. Nelson was unable to perform this landscaping work due to the injuries he sustained in the accident at issue, and thus seeks compensation for the income he would have earned had he been able to engage in his secondary employment. Nelson argues that he is not precluded from recovering this income because "the VAWC does not expressly or by necessary inference deny the right to seek compensation for income lost from a second job due to an injury on the worker's primary job." (Opp'n to Mot. for Summ. J. at 9.)

Virginia Code § 65.2–307 states that rights and remedies provided to an employee under the VWCA "exclude all other rights and remedies of such employee…at common law or otherwise, on account of [the] injury." VA. CODE ANN. § 65.2–307. This exclusionary provision represents one aspect of what is essentially a compromise between employers and employees under the VWCA to settle differences arising out of personal injuries. The Virginia Supreme Court stated the nature of this compromise in *Fauver v. Bell*, 192 Va. 518, 65 S.E.2d 575, 577 (1951):

> Under the Act both employer and employee surrender former rights and gain certain advantages. The employee surrenders his right to bring an action at law against his employer for full damages and agrees to accept a sum fixed by statute, based on the extent of his injuries and the amount of his wages. He gains a wider security in line with the more inclusive recovery afforded. The employer surrenders his right of defense on the grounds of contributory negligence, assumption of risk and the fellow servant rule. He is relieved from liability for damages to the employee for which in an ordinary negligence case he might otherwise be liable to a much greater extent. Negligence is of no concern in a compensation case unless the injury is caused by the employee's wilful negligence or misconduct. Rules of evidence are relaxed and procedures simplified. Rights granted and obligations imposed are limited as granted or imposed by the Act and are in their nature contractual.

■ While the VWCA provides the exclusive remedy for industrial injuries within its purview, an employee's common-law remedies are preserved where an incident is not covered by the VWCA. *Griffith v. Raven Red Ash Coal Co.*, 179 Va. 790, 20 S.E.2d 530, 534 (Va.1942). For example, in *Richmond Newspapers, Inc. v. Hazel-wood*, 457 S.E.2d 56 (Va.1995), the Supreme Court of Virginia held that an employee's injury did not arise out of his employment and therefore, his common-law action for an injury resulting from a goosing by a co-employee was not barred by the exclusivity provision of the VWCA. In *Middlekauff v. Allstate Ins. Co.*, 247 Va. 150, 439 S.E.2d 394 (1994), the Court held that an employee's allegations that she incurred severe emotional distress due to harassment by her supervisor did not allege an "injury by accident" within the purview of the VWCA, and thus the employee's action against her employer was not barred by the Act's exclusivity provision. Nelson argues that compensation for income lost from a second job is not covered by VWCA, and thus he, like the plaintiffs in *Hazelwood* and *Middlekauff*, should be permitted to proceed with his claim against the U.S.P.S.

Contrary to Nelson's assertion, losses related to secondary employment may be accounted for under the VWCA. In order to approximate the economic loss suffered by an employee when there is a loss of earning capacity because of a work-related injury, Virginia Code § 65.2–101(A) provides for the calculation of an employee's "average weekly wage." This calculation is then used to determine the compensation an injured employee is to receive. *See* VA. CODE ANN. § 65.2–500. In calculating the "average weekly wage," courts have held that the Workers' Compensation Commission may include an employee's combined earnings from other similar employment, regardless of whether such employment would otherwise be covered by the VWCA. *See Wood Products of Virginia v. James*, 20 Va.App. 116, 455 S.E.2d 722 (1995) (affirming the inclusion of claimant's earnings from his independent truck driver employment in the average wage calculation); *First Virginia Banks, Inc. v. McNeil*, 8 Va.App. 342, 381 S.E.2d 357

(1989) (affirming the inclusion of claimant's secondary earnings from housecleaning for individual homeowners in the average wage calculation).

Even if Nelson's employment as an independent landscaper would not qualify as similar in nature to his employment with McCann, thus excluding it from the VWCA average weekly wage calculation, Nelson is not permitted to bring a separate action in tort against the U.S.P.S. Nelson in effect argues that the exclusivity provision of the VWCA only operates to prevent a claimant from recovering in tort those benefits he can receive under the Act. Specifically, Nelson states that he "does not...seek a double recovery, only to be made whole." (Opp'n to Mot. for Summ. J. at 8.) However, by accepting the provisions of the VWCA, an employee agrees to accept the compensation provided under the Act to the exclusion of other rights and remedies he may have at common law or otherwise against his employer on account of his injury. *See Feitig v. Chalkley*, 185 Va. 96, 38 S.E.2d 73, 75 (1946). That is, an employee sacrifices the potentially more significant recovery a tort claim could bring in exchange for the more dependable recovery fixed under the VWCA. Admittedly, the VWCA exclusivity provision has not been applied as broadly as its language might imply. Nelson references a number of cases in which the exclusivity provision did not prohibit an employee's common law right to sue a third-party for a work-related accident, or even initiate an action against his employer for a non-work-related accident. However, in the current action, the plaintiff seeks to bring a tort claim against his employer for a work-related injury for which he has already recovered under the VWCA–exactly the situation to which the exclusivity provision was intended to apply. To allow Nelson to proceed in tort against the U.S.P.S. because he is dissatisfied with the compensation he received under VWCA would ig-nore the compromise between employers and employees upon which the Act is based.

### B. The U.S.P.S. as a Statutory Employer

■■■ Virginia Code § 65.2–302 reads, in relevant part:

Statutory Employer.—A. When any person (referred to in this section as an "owner") undertakes to perform or execute any work which is part of his trade, business or occupation and contracts with any other person (referred to in this section as a "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.

"The purpose of this statute...is to expand the popular definition of 'employer' in order to bring within the VWCA independent contractors and subcontractors who are engaged in work that is part of the trade, business, or occupation of the owner." *McCotter v. Smithfield Packing Co., Inc.*, 849 F.Supp. 443, 447 (E.D.Va.1994). Thus, if an owner qualifies as a statutory employer under the statute, he is entitled to the bar against common law employee tort actions provided by the VWCA exclusivity provision. *Id.* However, if a defendant is not a statutory employer, but rather an "other party" within the meaning of Virginia Code § 65.2–309, the VWCA does not prohibit a tort action against that party for a work-related injury. *See Burroughs v. Walmont, Inc.*, 210 Va. 98, 168 S.E.2d 107, 108 (1969). A corporation is an "other party" if, at the time of the accident, the plaintiff and his employer were not performing work that was part of

the corporation's trade, business, or occupation. *Stevens v. Ford Motor Co.*, 226 Va. 415, 309 S.E.2d 319, 322 (1983). Therefore, to determine whether an owner is a statutory employer, and thus covered by the VWCA exclusivity provision, or an "other party," and not protected against work-related injury tort claims, the court must first find whether the worker was performing the trade, business, or occupation of the owner.

Depending on the nature of the owner, the Virginia Supreme Court utilizes two different tests to define the scope of an owner's trade or business. *See McCotter*, 849 F.Supp. at 447–48. Where an owner is a private enterprise, the Court determines whether the task at issue "is one which is usually performed by the employees of the owner as opposed to independent contractors." *Id.* at 448. In *Shell Oil Co. v. Leftwich*, 212 Va. 715, 187 S.E.2d 162, 167 (1972), the Virginia Supreme Court adopted the following test enunciated by Arthur Lawson in volume 1A of THE LAW OF WORKMEN'S COMPENSATION:

> [T]he test is not one whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction or transportation service. The test . . . is whether this indispensable activity is, in that business, normally carried on through employees rather than independent contractors. LARSON, § 49.12.

In contrast, "whether the Government or a Government contractor actually performs the work is irrelevant in determining the Government's 'trade, business, or occupation,' provided that statutes or regulations authorize the work in question." *Lawrence v. United States*, 1992 WL 190721, *1, 972 F.2d 340 (4th Cir.1992) (unpublished opinion). In *Henderson v. Tele-*

*phone Co.*, 233 Va. 377, 355 S.E.2d 596, 599–600 (1987), the court stated the following with regard to governmental entities:

> It is not simply what [governmental entities] do that defines their trade, business, or occupation. What they are supposed to do is also a determinant. . . . Moreover, in cases involving government entities, we have consistently considered the laws under which they were created and under which they functioned in determining their trade, business, or occupation.

The plaintiff argues that the U.S.P.S. is not a governmental entity, and thus the *Shell Oil* test should be applied in the current case to determine whether the U.S.P.S. was Nelson's statutory employer. Specifically, the plaintiff maintains that, "in enacting the PRA [Postal Reorganization Act], Congress expressly revoked the status of the Post Office as a governmental agency, and enacted legislation creating the Postal Service as a competitive corporate entity." (Opp'n to Mot. for Summ. J. at 11.) The plaintiff claims that applying the *Henderson* governmental entity test to the U.S.P.S. would give it an unfair advantage over competitors like UPS and FedEx, who are "forced to maintain a large in-house labor force or be subject to damage suits as an 'other party' under the *Shell Oil* test." *Id.* Furthermore, the plaintiff argues that the Virginia Supreme Court's decision in *Nichols v. VVKR, Inc.*, 241 Va. 516, 403 S.E.2d 698 (1991), in which the *Shell Oil* test, and not the *Henderson* test, was used to determine whether the plaintiff was a statutory employee of the Greater Roanoke Transit Company (GRTC), supports a finding that the *Shell Oil* test should be used in the current case.

In *Nichols*, the plaintiff had been injured while working for a construction company hired by GRTC to construct the

Campbell Court Transportation Station/Mini–Mall, a construction/rehabilitation project designed to provide public mass transportation facilities, downtown parking facilities, retail space, and revitalization and urban redevelopment of a downtown shopping district in the City of Roanoke. In holding that the *Shell Oil* test should be applied to determine the trade, business, or occupation of GRTC, the Court stated the following:

> GRTC is a duly chartered corporation authorized to enter into contracts in its own name, to acquire title to real property, as well as to sue and be sued.... GRTC exists separate and apart from the City, regardless of how cooperatively the City and GRTC may function or how the board of directors or the City Council "views" GRTC. Unlike a public utility or a government agency, the only requirements placed on GRTC's activities are those contained in its charter and bylaws, which it can amend, and those it voluntarily or by contract chooses to observe. Application of the *Henderson* test to determine the trade, business, or occupation of GRTC is inappropriate. 403 S.E.2d at 701–02 (internal citations omitted).

As this statement demonstrates, underlying the application of different tests to evaluate the "trade, business or occupation" of private and governmental entities is the fact that, "whereas a private business entity is essentially self-defining in terms of its trade, business, or occupation, a public utility has duties, obligations, and responsibilities imposed upon it by statute, regulation, or other means." *Henderson,* 355 S.E.2d at 600. While Congress has taken steps to grant the U.S.P.S. more autonomy than some governmental agencies, the court finds that the business of the U.S.P.S. is not so self-directed that application of the *Shell Oil* test would be appropriate in this case. This finding corresponds with this court's holding in *Pru-*

*dencio v. Runyon,* 3 F.Supp.2d 703 (W.D.Va.1998), in which the court determined that the U.S.P.S. was a "government agency" and, thereby, shielded from exposure to punitive damages for a violation of Title VII. While the VWCA, and not Title VII, is at issue in the current case, this court's findings in *Prudencio* with regard to the status of the U.S.P.S. as a "government agency" are equally applicable in the case now before the court.

In *Prudencio,* while recognizing that the U.S.P.S. possesses a significant degree of managerial autonomy, this court found that, in passing the PRA, Congress never intended to privatize the U.S.P.S. fully. 3 F.Supp.2d at 707–08. This finding was supported by the Seventh Circuit's decision in *Baker v. Runyon,* 114 F.3d 668, 670–71 (7th Cir.1997), in which it stated the following:

> The Postal Service may be run in a manner similar to a private entity, but it is not a private commercial entity.... Congress may have vested the Postal Service with significant powers in order to increase its independence and autonomy, but it also provided that the Postal Service is part of the executive branch of government, that its employees are part of the federal civil service, and that it possesses certain powers unique to governmental entities.... (internal citations omitted)

In *Baker,* the Court also noted that when Congress intends to privatize completely an organization it establishes, it clearly says as much in the body of the enabling statute. Congress made such clear expressions of its intent with respect to the Corporation for Public Broadcasting ("PBS") and Amtrack. *Id.* at 671 (citing and quoting 47 U.S.C. § 396(b) (PBS "will not be an agency or establishment of the United States Government"); 45 U.S.C. § 541 (Amtrack "will not be an agency or

establishment of the United States Government") (repealed)). Furthermore, unlike the GRTC, the activities of which are restricted only by its charter and bylaws, which it can amend, the U.S.P.S. is ultimately subject to obligations imposed on it by law. For example, 39 U.S.C. § 101(a) and (b) state the following:

(a) ... [The U.S.P.S. is] obligat[ed] to provide postal services to bind the nation.... It shall provide prompt, reliable, and efficient services to patrons in all areas and shall render postal services to all communities.... (b) The Postal Service shall provide a maximum degree of effective and regular postal services to rural areas, communities, and small towns where post offices are not self-sustaining. No small post office shall be closed solely for operating at a deficit....

These government-imposed obligations support a finding that the scope of the U.S.P.S.'s "trade, business, or occupation" is best defined by using the test articulated by the Virginia Supreme Court in *Henderson.*

Under the *Henderson* test, Nelson was engaged in the "trade, business, or occupation" of the U.S.P.S. when he was injured. The U.S.P.S. is required by law to deliver mail to communities in the United States, an activity that Nelson was engaged in at its most basic level when he was injured. Therefore, this court finds that the U.S.P.S. qualifies as Nelson's statutory employer under the VWCA, and thus it is covered by the VWCA exclusivity provision. In fact, even if, as the plaintiff suggests, the approach taken by the Virginia Supreme Court in *Nichols* should be applied in this case, the U.S.P.S. would likely still qualify as Nelson's statutory employer. The Court in *Nichols* stated that

The Shell test is "only a corollary guide, sometimes useful but not indispensable, in applying the literal language of the

statutes to the facts in a particular case." The key issue here is whether construction and rehabilitation of a transportation and retail facility was part of GRTC's business purpose of providing mass transportation services.... [The] purpose...established in its articles of incorporation. 12 Va.App. 294, 403 S.E.2d 702 (quoting *Cinnamon v. Int'l Bus. Mach.*, 238 Va. 471, 384 S.E.2d 618, 622 (1989))

The Court found that providing a facility incidental to, or even necessary to, the conduct of the owner's business is not itself the trade, business, or occupation of the owner. For example, the court noted that in *Cinnamon* the construction of physical plants for the production of its computers was not the trade, business, or occupation of IBM. However, in the current case, Nelson was transporting mail between distribution points and thus engaging in one of the most fundamental aspects of the mail delivery process. Only the actual delivery of mail to individual homes and businesses could be considered a more rudimentary component of the U.S.P.S.'s purpose, and thus, even under the analysis applied in *Nichols*, the U.S.P.S. would likely qualify as Nelson's statutory employer.

### IV.

In addition to his suit for monetary damages, Nelson amended his original complaint to include "a plea for equitable relief directing the U.S.P.S. to follow its own safety guidelines and regulations." (Opp'n to Mot. for Summ. J. at 6.) Nelson maintains that the working conditions and safety violations that allegedly caused his injury have not been corrected to date, creating the risk that Nelson and other workers may suffer future injury. Neither party has attempted to address the merits of Nelson's claim for equitable relief, nor does the Magistrate Judge's Report and

Recommendation make reference to the claim.

 While the VWCA is the exclusive method for securing monetary recoveries for damages resulting from work-related injuries, the Act is silent with regard to the question of injunctive relief against occupational hazards. That is, the VWCA contains no provision making it the exclusive method of protecting a worker against an occupational hazard. For this reason, the court's finding that the VWCA exclusivity provision bars Nelson's action in tort for damages is not applicable to Nelson's claim for injunctive relief. This finding is in accord with decisions interpreting other state worker's compensation acts worded similarly to the VWCA. *See Conway v. Circus Circus Casinos, Inc.,* 8 P.3d 837, 841 (2000) (holding that the Nevada Industrial Insurance Act's exclusive remedy provision did not bar an employee's claims for injunctive relief); *Shimp v. New Jersey Bell Tel. Co.,* 145 N.J.Super. 516, 368 A.2d 408, 412 (1976) (finding that the New Jersey Worker's Compensation Act, while the exclusive method of securing money recoveries, does not bar claims for injunctive relief against occupational hazards); *see also* MODERN WORKER'S COMPENSATION § 102:1 (West Group 2001) (stating that claims for injunctive relief may not be barred under state worker's compensation acts); MARK A. ROTHSTEIN, OCCUPATIONAL SAFETY AND HEALTH LAW § 483 (4th ed.1998) (stating that "the 'exclusive remedy' provisions of state workers' compensation laws...generally apply only to actions for damages and do not apply to actions for injunctive and declaratory relief"); Alfred W. Blumrosen et al., *Injunctions Against Occupational Hazards: The Right to Work Under Safe Conditions,* 64 CAL. L. REV. 702, 712 (1976) (discussing use of injunctions to compel workplace safety and stating that "employer liability acts and workmen's compensation laws modified the common law

only with respect to damages."). However, injunctive relief like that requested by Nelson should only be considered where available administrative efforts have proved inadequate. Nelson not only has available to him the federal standards set forth under the Occupational Safety and Health Act ("OSHA"), but he may also file a complaint with the Virginia State Health Commissioner under Virginia Code § 40.1–51.2. Virginia Code § 40.1–51.2 states, in relevant part, the following:

> Employees...may bring...any hazardous conditions that exist...to the attention of the Commissioner or his authorized representative.... Upon receipt of any complaint of hazardous conditions, the Commissioner or his authorized representative shall cause an inspection to be made as soon as practicable. Within two working days after making the oral complaint the employee...shall file a written complaint with the Commissioner..., if at that time, the Commissioner...has not caused the hazardous condition to be corrected.

"The existence of federal and state procedures to enforce the right to work under safe conditions suggests the need to exhaust the administrative remedies before recourse to the courts." Blumrosen at 715. Thus, before Nelson is permitted to bring an action for injunctive relief before this court, he must exhaust the available federal and state administrative procedures, particularly that under Virginia Code § 40.1–51.2.

## V.

In accordance with the foregoing, the Magistrate's Report and Recommendation shall be accepted, and the plaintiff's action shall be dismissed. An appropriate order shall this day enter.

*FINAL ORDER*

For the reasons stated in the accompanying Memorandum Opinion, it is accordingly this day

ADJUDGED, ORDERED
and DECREED

as follows:

1. The July 13, 2001 Report and Recommendation of the Magistrate Judge shall be, and it hereby is, ACCEPTED.

2. The plaintiff's objections to the Report and Recommendation shall be, and they hereby are, OVERRULED.

3. The court interprets the defendant's May 18, 2001 motion for summary judgement as a motion to dismiss, and such motion shall be, and hereby is, GRANTED.

4. The plaintiff's action shall be, and it hereby is, DISMISSED WITH PREJUDICE, to the extent that it seeks monetary damages, and DISMISSED WITHOUT PREJUDICE to the extent that it seeks injunctive relief.

5. The above-captioned civil action shall be STRICKEN from the active docket of the court.

The Clerk of the Court hereby is directed to send a certified copy of this order and the accompanying Memorandum Opinion to all counsel of record and to Magistrate Judge Crigler.