# Michael E. Cinnamon

## v.

# International Business Machines Corp.

Record No. 880325

September 22, 1989

Present: Carrico, C.J., Compton, Stephenson, Russell, Whiting, Lacy, JJ., and Poff, Senior Justice

Karen A. Crist (Peter C. DePaolis; Koonz, McKenney & Johnson, P.C., on briefs), for appellant.

Benjamin J. Trichilo (E. Stanley Murphy; Lewis, Tydings, Bryan & Trichilo, P.C., on brief), for appellee.

Senior Justice Poff delivered the opinion of the Court.

This is an appeal from a judgment dismissing a common-law, personal-injury action on the ground that the plaintiff's exclusive remedy was a claim under the Workers' Compensation Act. The sole issue is whether, as the trial court ruled, a manufacturer who engaged a general contractor to construct a building for use in the conduct of its business was the statutory employer of a worker hired by a subcontractor engaged by the general contractor to paint the building.

International Business Machines Corporation (IBM) engaged John B. Pike and Son, Inc. and Paschen Contractors, Inc., Joint Venture (Pike), to "do all things necessary for the construction and completion of IBM's Semiconductor Manufacturing Building". The 60-million dollar contract represented the first phase of a staged building project estimated to cost 150-million dollars. As conditions to the contract, IBM reserved to its real estate and construction division the rights, *inter alia*, to prepare plans and specifications, to approve any changes Pike might make in its project manager and general superintendent, to control access to the job site and the amount of dust generated by traffic, to issue and approve change orders, to review job progress reports, and to approve material suppliers and subcontractors. However, upon approval, subcontracts were to be made and executed "in the name of [Pike] and not in the name of IBM."

Pike subcontracted the painting work to O. B. Cannon and Son, Inc. (Cannon). On November 14, 1984, Michael E. Cinnamon,

one of Cannon's employees, sustained grievous injuries in a fall from a trestle where he was at work painting pipes.

Cinnamon received workers' compensation benefits from Cannon. In November 1986, he filed a motion for judgment against IBM, Pike, and Cannon alleging, among other complaints, that the defendants had failed to provide a safe workplace and personal safety equipment. Asserting a challenge to the subject-matter jurisdiction of the court, the defendants moved for summary judgment on the ground that the plaintiff's exclusive remedy was a claim under the Workers' Compensation Act. Although Cinnamon agreed that Cannon was his primary employer and Pike his statutory employer, he maintained that IBM was an "other party" beyond the scope of the exclusivity provision of the Act, Code § 65.1-40. The trial court sustained the defendants' motion and dismissed the plaintiff's motion for judgment with prejudice. Cinnamon filed a petition for appeal naming IBM as the sole respondent. We granted an appeal limited to the issue stated above.

We look first to the standard of appellate review. Although Cinnamon is not seeking workers' compensation coverage from IBM, "our consideration of this appeal is nevertheless governed by the principles that apply in a case where coverage is sought." *Henderson* v. *Central Telephone Company*, 233 Va. 377, 382, 355 S.E.2d 596, 599 (1987). "The issue whether a person is a statutory employee presents a mixed question of law and fact . . . ." *Cooke* v. *Skyline Swannanoa*, 226 Va. 154, 156, 307 S.E.2d 246, 247 (1983). Where, as here, the facts relevant to resolution of a jurisdictional issue are not in dispute, we must determine whether the trial court correctly applied the law to those facts. *See Carmody* v. *F. W. Woolworth Co.*, 234 Va. 198, 201, 361 S.E.2d 128, 130 (1987).

The relevant statutory law consists of three sections of the Workers' Compensation Act. The first, Code § 65.1-29, specifies when an owner becomes liable to pay compensation to an injured employee of an independent contractor. An owner becomes a "statutory employer" when it "undertakes to perform . . . any work which is part of [its] trade, business or occupation and contracts with any other person . . . for the . . . performance by or under such [person] of the whole or any part of the work undertaken by such owner".

The second section, § 65.1-30, states the conditions under which a general contractor becomes liable to pay compensation to

an injured employee of a subcontractor. A general contractor becomes a statutory employer when he contracts with an owner to perform work which "is not a part of the trade, business or occupation of" the owner and engages a subcontractor to perform "the whole or any part of the work undertaken by such [general] contractor".

■ The third section, § 65.1-31, provides that any owner or general contractor liable for compensation under § 65.1-29 or § 65.1-30 becomes the statutory employer of an employee of a secondary subcontractor engaged by a primary subcontractor to perform "the whole or any part of the work undertaken by the [primary] subcontractor".[1]

■ We turn now to the case law construing and applying these statutes. In *Shell Oil Co.* v. *Leftwich*, 212 Va. 715, 187 S.E.2d 162 (1972), we quoted and applied the following explication of the statutory language:

" '[T]he test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction or transportation service. The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether this indispensable activity is, in that business, *normally* carried on through employees rather than independent contractors.' (Emphasis supplied.)"

*Id.* at 722, 187 S.E.2d at 167 (citation omitted).

---

[1] These three sections appear to conflict with § 65.1-5 which provides that "[n]othing in this Act contained shall be construed to make . . . the employees of an independent contractor the employees of the person . . . contracting with such independent contractor." But the four sections, read together, have been reconciled.

It clearly appears to be the purpose . . . to bring within the operation of the Compensation Act all persons engaged in any work that is a part of the trade, business or occupation of the original party who undertakes as owner, or contracts as contractor, to perform that work, and to make liable to every employe[e] engaged in that work every such owner, or contractor, and subcontractor, above such employee. But when the employe[e] reaches an employer in the ascending scale, of whose trade, business or occupation the work being performed by the employe[e] is not a part, then that employer is not liable to that employe[e] for compensation . . . . At that point [Code § 65.1-5] intervenes and the employe[e]'s right of action at common law is preserved."

*Sykes* v. *Stone & Webster Eng. Corp.*, 186 Va. 116, 122-23, 41 S.E.2d 469, 472 (1947).

Addressing the language within the parentheses, IBM reminds us that the construction work Pike had undertaken in the contract with IBM was the first phase of a staged project estimated to cost $150 million. IBM argues on brief, as it did below, that Pike "was performing construction services for IBM pursuant to a 60 million dollar contract, which was manifestly a fraction of a main contract or a main concern of IBM. Whether construction activities are frequently and normally carried out by employees rather than independent contractors need not be considered where, as here, 'the work is obviously a subcontracted fraction of a main concern.' "

■ The *Shell Oil* test, which we have employed as a tool in the application of the statutory test, consists of two prongs. One, the so-called "normal-work test", relates to the determination of statutory-employer status as defined in Code §§ 65.1-29, -31. As the language of those statutes makes clear, that prong relates to an owner who engages an independent contractor to perform certain work. If the work out of which the industrial accident arose is, in the language of *Shell Oil*, work "normally carried on through [the owner's] employees rather than independent contractors", it is, in the language of the statute, a "part of [the owner's] trade, business or occupation". In such case, the owner is the statutory employer of the injured worker, whether directly employed by the independent contractor or by a subcontractor.

■ The other prong, an exception to the first and sometimes labelled the "subcontracted-fraction test", relates to the determination of statutory-employer status as defined in Code §§ 65.1-30, -31. In the context of the construction business, it relates to a general contractor, the party obligated by the main contract with the owner to complete the whole project. If the work out of which the accident arose was, in the language of *Shell Oil*, "obviously a subcontracted fraction of [that] contract" and, in the language of the statute, "not a part of the trade, business or occupation of " the owner, the general contractor who engaged the subcontractor to perform that fraction is the statutory employer of the injured worker, whether directly employed by the primary subcontractor or by a secondary subcontractor.

Invoking the subcontracted-fraction prong of the *Shell Oil* test as proof of its status as Cinnamon's statutory employer, IBM relies principally upon our recent decision in *Cooke* v. *Skyline Swannanoa, supra*. Although *Cooke* applies the test IBM invokes,

the decision is inapplicable here. In *Cooke*, the main contract was a license agreement in which Skyline contracted with Holiday Inn to operate, or cause to be operated, a motel providing food and lodging. Later, Skyline engaged Angus Barn to operate a restaurant in the motel. In a common-law action filed against Skyline by Cooke, a restaurant employee injured on the premises, the trial court ruled that Skyline was Cooke's statutory employer, applied Code § 65.1-40, and dismissed the motion for judgment.

On appeal, we upheld the trial court's ruling on the ground that "the restaurant work Angus Barn contracted to undertake is 'obviously a subcontracted fraction' of Skyline's main agreement with Holiday Inn". 226 Va. at 159, 307 S.E.2d at 249. By analogy, the painting work Cannon contracted to undertake is "obviously a subcontracted fraction" of Pike's main agreement with IBM. Consequently, Pike, the general contractor, is Cinnamon's statutory employer. But our decision in *Cooke*, where we had no occasion to consider Holiday Inn's status, does not resolve the question whether IBM is Cinnamon's statutory employer.

The same is true of our decision in *Whalen* v. *Dean Steel Co.*, 229 Va. 164, 327 S.E.2d 102 (1985), another case cited by IBM. There, we held that a general contractor who engaged a specialty subcontractor to perform a portion of the main construction contract was not a "stranger" to the work and hence, that the common-law action filed by the subcontractor's employee against the general contractor was barred by Code § 65.1-40. *Id.* at 170, 327 S.E.2d at 105. The relationship between the subcontractor's employee and the owner was not in issue.

Pursuing its reliance on the subcontracted-fraction prong, IBM cites *Carmody* v. *F.W. Woolworth Co.*, 234 Va. 198, 361 S.E.2d 128 (1987); *Henderson* v. *Central Telephone Company*, 233 Va. 377, 355 S.E.2d 596 (1987); and *Conlin* v. *Turner's Express, Inc.*, 229 Va. 557, 331 S.E.2d 453 (1985). All are inapposite; none applied the test on which IBM relies.

In *Smith* v. *Horn*, 232 Va. 302, 351 S.E.2d 14 (1986), we held that two employees of separate independent contractors, engaged by the same mine owner to mine its coal, were statutory fellow employees and, as such, that one was barred from bringing a negligence action against the other for personal injuries sustained in an accident covered by the Workers' Compensation Act. Construing the relevant statute, we said that

Code § 65.1-29 contemplates that an owner may perform or execute work that is part of his trade, business, or occupation through contractors and subcontractors, directly employing no workers for the purpose; if the work performed by an employee of the contractor or subcontractor is part of the owner's trade, business, or occupation, the worker is deemed the statutory employee of the owner, and the owner is liable for compensation as though the worker were his own employee.

*Id.* at 305-06, 351 S.E.2d at 16 (citation omitted). Because the work of mining the coal was unquestionably part of the mine owner's trade, business, or occupation (the mining, processing, and sale of coal), a part performed by independent contractors engaged by the mine owner, we found it unnecessary to determine whether the normal-work prong of the *Shell Oil* test was satisfied.

■ Here, we find it unnecessary to apply either prong of the *Shell Oil* test. Indeed, that test is only a corollary guide, sometimes useful but not indispensable, in applying the literal language of the statutes to the facts in a particular case.[2] In the case at bar, we need determine only whether (1) IBM, an owner, engaged an independent contractor (2) to "perform . . . work which is part of [IBM's] trade, business or occupation" within the contemplation of Code §§ 65.1-29, -31. If so, IBM is Cinnamon's statutory employer.

■ As a general rule, the several trades involved in construction work are not part of the business of manufacturing products for sale. *See e.g., Bassett Furniture* v. *McReynolds,* 216 Va. 897, 224 S.E.2d 323 (1976) (construction of conveyor system not part of business of manufacturing furniture); *Raines* v. *Gould, Inc.,* 288 S.C. 541, 547, 343 S.E.2d 655, 659 (Ct. App. 1986) ("Every manufacturer must have a plant, but this fact alone does not make the work of constructing a plant a part of the trade or business of every manufacturer who engages a contractor to construct a plant."); *see generally,* IC A. Larson, *The Law of Workmen's Compensation* § 49.12 at 9-25 (1982).

Urging an exception to the general rule, IBM points out that it maintained a "real estate and construction division" within its

---

[2] "[A]ny guide to statutory construction . . . only serves as an aid for resolving an ambiguity; it is not to be used to beget one." *Callahan* v. *United States,* 364 U.S. 587, 596 (1961) (footnote omitted).

corporate structure and that, in its contract with Pike, it reserved to employees assigned to that division authority to prepare plans and specifications, to approve subcontract awards, to issue change orders, and to monitor the progress of construction. In such case, IBM contends, construction projects should be recognized as part of an owner's business operation for purposes of the Workers' Compensation Act.

We decline to adopt the rule IBM urges. In awarding construction contracts, business owners usually reserve to a discrete group of their employees authority to oversee the performance of those contracts. If the owner is incorporated, such authority may be assigned to a group formally organized as a construction division. The existence of any such group, vested with such authority, is immaterial to the resolution of a statutory-employer question unless the owner has created and utilized that group to perform its own construction work as part of the conduct of its business operation. *See Ray* v. *Monsanto Corp.*, 420 F.2d 915, 921 (9th Cir. 1970) (manufacturer's reservation of authority to supervise construction performed by independent contractor did not make employee of independent contractor statutory employee of manufacturer, absent showing that manufacturer "normally does this kind of construction").

Our review of the record before us reveals nothing to show that the construction work which IBM engaged an independent contractor to perform ever had been performed by IBM's real estate and construction division as part of IBM's trade, business, or occupation. Applying the language of the statutory test to the facts of record, we hold that the trial court erred in ruling that IBM was Cinnamon's statutory employer. We will reverse the judgment dismissing Cinnamon's motion for judgment and remand the case for further proceedings.

*Reversed and remanded.*