## CIRCUIT COURT OF THE CITY OF RICHMOND

R. A. Scott

v.

ACM Construction
Management Corp., etc., et al.

v.

KBS Steel

March 6, 1991

Case No. LS-674-4

By JUDGE RANDALL G. JOHNSON

This case is before the court on a plea of the Workers' Compensation Act. The case arises out of an injury which occurred during the construction of Evergreen Elementary School in Chesterfield County. Plaintiff, R. A. Scott, alleges that he was injured when a ladder he was ascending pulled loose from the masonry to which it was attached. His suit is filed against ACM Construction Management Corporation, which was the general contractor ("ACM" or the "general contractor"), the School Board of Chesterfield County, and the County of Chesterfield.[1] ACM has filed a third-party motion for judgment against KBS Steel, which

---

[1] Neither the school board nor the county has ever been served with process, and neither has made any appearance in the case.

ACM claims was responsible for installing the ladder which allegedly caused plaintiff's injuries.

At the time of the accident, plaintiff was employed by a company called TAMKO.[2] TAMKO provides roofing systems, and it had contracted with T. R. Davis, ACM's roofing subcontractor, to provide the roofing system for Evergreen Elementary. That contract also required TAMKO to provide a warranty on the roof. It was plaintiff's job to inspect the roof during various phases of construction to insure compliance with TAMKO's installation standards, thus facilitating TAMKO's issuance of its warranty. It was during one such inspection that plaintiff was allegedly injured.

At issue is whether ACM was, at the time of plaintiff's accident, plaintiff's "statutory employer" under Va. Code Sections 65.1-30 or 65.1-31; or an "other party" under Va. Code §§ 65.1-40 and 65.1-41 . . . . [T]he only important point is that while "statutory employers" are immune from common law actions by their "statutory employees" for personal injuries, "other parties" are not. Thus, it is ACM's position that it was plaintiff's statutory employer at the time of his alleged accident.

In making its plea, ACM relies principally on what is called the "subcontracted fraction" test. This test was mentioned by the Supreme Court in *Shell Oil Co. v. Leftwich*, 212 Va. 751, 188 S.E.2d 86 (1972):

> [T]he test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since after all, this could be said of practically any repair, construction or transportation service. The test (*except in cases where the work is obviously a subcontracted fraction of a main contract*) is whether this indispensable activity is, in that business, *normally* carried on through employees rather than independent contractors. 212 Va. at 722

---

[2] The facts recited by the court are those admitted in the pleadings, recited by plaintiff AND ACM, or contained in plaintiff's deposition, which all parties have stipulated may be considered by the court on ACM's plea.

(first emphasis added) (quoting 1A Larsen, *The Law of Workmen's Compensation*, § 49.12).

The same test was the subject of further discussion in *Cinnamon v. International Business Machines*, 238 Va. 471, 384 S.E.2d 618 (1989):

> In the context of the construction business, [the test] relates to a general contractor, the party obligated by the main contract with the owner to complete the whole project. If the work out of which the accident arose was, in the language of *Shell Oil*, "obviously a subcontracted fraction of [that] contract" and, in the language of the statute, "not a part of the trade, business or occupation of" the owner, the general contractor who engaged the subcontractor to perform that fraction is the statutory employer of the injured worker, whether directly employed by the primary subcontractor or by a secondary subcontractor. 238 Va. 476.

The fallacy of ACM's argument, however, is that it assumes that TAMKO is a "subcontractor." The court concludes that it is not.

Section 65.1-30 of the Code of Virginia defines a subcontractor as a person who contracts with a contractor to execute or perform "the whole or any part of the *work* undertaken by such contractor." (Emphasis added.) Section 65.1-31 provides that a subcontractor is also any person who contracts with another subcontractor to perform or execute "the whole or any part of the *work* undertaken by the first subcontractor . . . ." (Emphasis added.) As can be seen in either case, it is the execution or performance of some *work* undertaken by another, the contractor or another subcontractor, which makes a person a subcontractor.

Here, TAMKO, the "person" under consideration, did not contract with anyone to execute or perform any of the *work* undertaken by ACM or the roofing subcontractor. In this regard, the work to be performed was installing a roof. ACM contracted with the County of Chesterfield

and/or the Chesterfield County School Board, as part of its overall construction of Evergreen Elementary, to install a roof. ACM then subcontracted that work out to T. R. Davis, the roofing subcontractor. T. R. Davis, however, never subcontracted that work, the installation, out to TAMKO. Instead, Davis contracted with TAMKO for TAMKO to supply a roofing system; that is, the roofing *materials*. As such, TAMKO was merely a materialman, and plaintiff was simply a materialman's employee. Thus, contrary to ACM's assertion, plaintiff is not a statutory employee under the "subcontracted fraction" test set out in *Shell Oil* and *Cinnamon*, *supra*.

The real question in this case is whether plaintiff, as a materialman's employee, performed sufficient activity at the construction site so as to remove ACM from the "other party" status as that term is used and/or implied in §§ 65.1-40 and 65.1-41. Several Virginia Supreme Court cases, as well as cases from federal courts applying Virginia law, provide substantial guidance in answering this question.

In *Burroughs v. Walmont, Inc.*, 210 Va. 98, 168 S.E.2d 107 (1969), Burroughs, the plaintiff, was employed by a trucking company that delivered sheetrock to a construction site in a residential subdivision. As part of his delivery, Burroughs took specified quantities of sheetrock to the various rooms in the homes and stacked in each room the number of sections of sheetrock required to construct that room. He was injured when he fell down an open stairwell in one of the homes. In holding that Lindsey & Waldron, the general contractor at the construction site *was* an "other party," the Supreme Court stated:

> The gathering of material is of course essential to the construction of a building. So in a sense each supplier of material is engaged in the general contractor's trade, business or occupation. But a line must be drawn to determine who is an "other party" for the purposes of the Workmen's Compensation Act. And persons who function solely as suppliers and deliverers of goods have been held "other parties" . . . .
>
> In this case the stacking of sheetrock in the several rooms constituted the final act

of delivery, not an act of construction. So Burroughs' activities did not transcend delivery, and he was not engaged in the trade, business or occupation of Lindsey & Waldron. Lindsey & Waldron was therefore an "other party," and Burroughs could maintain this tort action. 210 Va. at 99-100 (citations omitted). *See also, Perkinson v. Thomas*, 158 Va. 699, 164 S.E. 561 (1932); *Garrett v. Tubular Prods., Inc.*, 176 F. Supp. 101 (E.D. Va. 1959).

*Burroughs* was decided after, and distinguished from, *Bosher v. Jamerson*, 207 Va. 539, 151 S.E.2d 375 (1966). In *Bosher*, Norvell Jamerson was injured while working for his employer, Re-Com Corporation. At the time of Jamerson's injury, Re-Com was the general contractor on a construction site at a facility owned by Reynolds Metals Company. Southern Materials had a contract with Re-Com to provide sand to be spread beneath the foundation of the project in question. Southern Materials, in turn, contracted with Alton Bosher for Bosher to deliver the sand in Bosher's truck. When Bosher's employee arrived at the construction site with the sand, Re-Com's superintendent told him to take the load into the foundation area and to spread it in a certain manner. The driver was also told by the superintendent how to maneuver his truck into the foundation area. It was during the spreading of the sand that Jamerson was struck by the truck and injured. The Court held that Bosher and the truck driver were *not* "other parties":

Re-Com's contract with Reynolds required it to lay a six-inch sand base over the foundation area. Bosher, who undertook to deliver the sand ordered by Re-Com, was obligated to "spread [the sand] at such location and in such manner as directed by purchaser [Re-Com] or his representative on the job site." Furthermore, Bosher's driver Granderson was instructed "to deliver, dump, or spread as directed by the Re-Com supervisor." Granderson was engaged in the spreading operation inside the foundation area, as directed by the Re-Com supervisor, when he struck and

injured Jamerson. At that time, Granderson was performing work that was part of the trade, business or occupation of Re-Com. Consequently, neither Granderson nor Bosher was an "other party" within the meaning of Code § 65-38. Jamerson's tort action against Bosher was therefore barred by Code § 65-37, and the trial court should have sustained Bosher's plea. 207 Va. at 542-43.[3]

In *Bergen v. Fourth Skyline Corporation*, 501 F.2d 1174 (4th Cir. 1974), Miller and Long, a subcontractor responsible for doing concrete work in connection with the construction of an apartment building, contracted to purchase mixed concrete from Sterling Concrete Corp. Plaintiff, an employer of another subcontractor, was injured when the building collapsed, allegedly due to inferior concrete sold by Sterling. The district court held that suit against Sterling was barred by the Workers' Compensation Act. Specifically, the court found that Sterling had a batching plant at the site and that a number of Sterling's employees were assigned to the construction project under Miller and Long's supervision. These employees conducted tests and advised about problems relating to the concrete. After discussing these and related facts, the appellate court vacated the summary judgment. It stated:

> From the record developed on the motion for summary judgment, one may indeed infer that Sterling engaged in the business of the owner-contractor by performing services beyond those customarily furnished by companies delivering mixed concrete. On the other hand, its work on the job may have been incidental to its obligations as a materialman. Its employees may have been present for Sterling's own benefit, to assure quality control and deal with complaints or inquiries from Miller & Long. The absence of reimbursement for the extra work which Sterling

---

[3] Va. Code Sections 53-38 and 53-37 are now Sections 65.1-41 and 65.1-40, respectively.

now claims to have done and the testimony of the Development Company's general superintendent tend to indicate that it was not engaged in the work of the owner or the concrete contractor. We do not, however, suggest which inference is correct. The meager facts on which the court based its conclusions and the ambiguity created by the testimony of Sterling's employee and the Development Company's superintendent leave conflicting inferences which render summary judgment inappropriate. 501 F.2d at 1177.[4]

Finally, in *Turnage v. Northern Virginia Steel Corporation*, 336 F.2d 837 (4th Cir. 1964), it was held that the activities of Northern Steel's employees made Northern Steel more than a mere supplier. Among those activities were visiting the site to make field measurements, making extensive alterations in the erection drawings and in the design of the structural steel and steel joints, altering a balcony frame and working on steel canopies, giving construction and engineering advice, and actually making on-site alterations in the steel itself; that is, cutting and welding steel. 336 F.2d at 842-43. The court concluded that "[m]anifestly, the total picture suggested by these recited circumstances is not that of a mere fabricator or supplier of steel." *Id.* at 843. Accordingly, it affirmed the trial court's dismissal of Northern Virginia based on the bar of the Workers' Compensation Act.

From the above cases, a common thread emerges. In cases involving materialmen, the relevant inquiry is not simply whether they supply materials. Obviously, they do. Otherwise, they are not materialmen. The real question is whether, in those cases where a materialman engages in some activity in addition to simply delivering material, such additional activity is primarily, or perhaps even substantially, for the benefit of the owner, the contractor

---

[4] See also, Burnette v. General Electric Company, 389 F. Supp. 1317 (W.D. Va. 1975), where the court's finding that "it may be that the testing being performed by the General Electric employee at the time of the accident was simply 'incidental to its obligation as a materialman,'" made dismissal under a Workers' Compensation Act plea improper. 389 F. Supp. at 1320-21 (quoting Bergen).

or a subcontractor, or for the benefit of the materialman himself. If the former, then the materialman will most likely be held not to be an "other party," and suit will be barred. If the latter, he is an "other party," and is not immune from suit.[5] Applying this principle here, the court concludes that ACM is an "other party" and is amenable to suit by plaintiff.

ACM was responsible for building a school for Chesterfield County. T. R. Davis, the roofing subcontractor, was responsible for installing the roof. TAMKO, plaintiff's employer, was to supply the roofing materials. In addition, TAMKO was to provide a warranty on the roof. Plaintiff's job was to make periodic inspections of the roof during construction to insure that TAMKO's standards were met so that the warranty could be issued. In connection with those inspections, he made suggestions to the roofing subcontractor and ACM, which suggestions were generally followed. Such inspections and suggestions were the "additional activities" performed by TAMKO. The court easily concludes that such activities were for the primary and overwhelming benefit of TAMKO and that any benefit to ACM or T. R. Davis was incidental only.

It must be remembered that TAMKO's obligation was to provide, not install, a roofing system and to issue a warranty. There was no requirement from the owner, contractor, or subcontractor that TAMKO perform any inspections of the roof, or make any suggestions regarding the installation of the roof. Obviously, TAMKO could have sold its roofing system to ACM or T. R. Davis without making any inspections at all and without ever visiting the construction site. A warranty could have been issued just as easily. The problem, of course, if that TAMKO would then be exposing itself to potential liability without knowing whether the roof had been installed in a manner likely to avoid future problems. Since such future problems would likely be covered by its warranty, TAMKO, in order to minimize its risks under the warranty, insisted on making periodic

---

[5] Of course, if a materialman is an "other party" from a contractor's employee's perspective, the contractor is an "other party" from the perspective of the materialman's employee. That is, the concept applies to either party depending on who attempts to sue whom.

inspections and making suggestions to insure, so far as it could, that the roof would perform in accordance with the promises to be contained in the warranty. Thus, the inspections and suggestions were made for TAMKO's benefit. The owner, contractor, and subcontractor, while collaterally benefitting by not being inconvenienced in the future by problems which might be avoided by inspections and suggestions by TAMKO, were protected by TAMKO's warranty whether or not TAMKO chose to perform inspections or make suggestions. Accordingly, the work performed by plaintiff as an employee of TAMKO was performed primarily and overwhelmingly for the benefit of TAMKO. It was not performed primarily for the benefit of the owner, ACM, or T. R. Davis. Accordingly, ACM is an "other party" and may be sued by plaintiff. The plea in bar is overruled.