## CIRCUIT COURT OF THE CITY OF RICHMOND

Shirley Mae Lincoln

v.

International Speedway Corp.,
Richmond International Raceway, Inc.,
Broadcast Sports Technology Corp.,
Scott R. Good,
and Gary C. Hamilton

May 29, 2002

Case No. LM-1805-3

BY JUDGE T. J. MARKOW

This case is before the Court on a Special Plea in Bar based on Virginia's Workers' Compensation Act filed by defendants Richmond International Raceway (RIR), Broadcast Sports, Incorporated, Scott R. Good, and Gary C. Hamilton (collectively BSI). RIR alleges that plaintiff's cause of action is barred under the exclusivity provision of the Workers' Compensation Act because the plaintiff is either the statutory employee of the defendant or is a borrowed servant. BSI alleges that plaintiff's cause of action is barred under the exclusivity provision of the Workers' Compensation Act because the defendant and plaintiff are fellow statutory employees of NASCAR. Plaintiff denies that she is the statutory employee of RIR or a fellow statutory employee with BSI and asserts her cause of action is not barred by the Workers' Compensation Act.

Briefly, plaintiff was injured during her work at RIR taking tickets for the NASCAR Pontiac Excitement 400 event. On May 3, 2001, plaintiff was at the entrance gate of RIR, taking tickets for the event and training other Burns employees in taking tickets. Good and Hamilton, employees of BSI, were moving broadcasting equipment via a hydraulic lift nearby. As the lift ascended, a steel door on the lift fell, hitting the plaintiff.

Plaintiff filed a Motion for Judgment against RIR, BSI, and others based on her injuries.

Plaintiff is an employee of Burns International Security Services with whom RIR contracted to control the public during the event. RIR executed a contract with NASCAR to promote and conduct the event. The contract between RIR and NASCAR, in part, requires that RIR will "furnish adequate facilities, personnel (including security personnel), equipment, and services for accommodating and controlling the public during the Event." RIR contracted with Burns to help fulfill these contractual duties.

During her work at RIR, plaintiff reported to Bruce Simmons, a Burns employee in charge of supplying and supervising the Burns personnel at RIR. Jackie Cahoon, the Vice President for Operations at RIR, informed Simmons what the Burns employees were to do and how they were to do it. Cahoon controlled the number of Burns employees, their location, and the times they worked. On at least one occasion, Cahoon directed Simmons that a Burns employee was unsatisfactory and should not return to work at RIR.

Plaintiff's general job duties consisted of working at the entrance gates to RIR, taking tickets, checking credentials and coolers, and reporting disturbances. Plaintiff and other Burns employees performed these functions along with an occasional RIR employee. RIR employees have entirely performed this function in the past.

Additionally, as a part of the contract with RIR, NASCAR reserved the rights to all images of the event and required RIR to provide access for the broadcasting of the event. NASCAR's affiliated corporation, NASCAR Broadcasting, Ltd., contracted with Fox Broadcasting Company to broadcast stock car racing events. Fox in turn contracted with BSI to provide broadcast services and equipment specifically for the Pontiac Excitement 400 event.

*"RIR as Statutory Employer*

RIR contends that the exclusivity provision of the Workers' Compensation Act bars the present action because plaintiff was engaged in the trade, business, or occupation of RIR and was thus a statutory employee of RIR. RIR argues the court should apply either the subcontracted fraction exception or, in the alternative, the normal work test. Plaintiff argues that both the normal work test and the subcontracted fraction should be set aside in this case and the court instead should look at other factors.

The Workers' Compensation Act provides that recovery under the Act is the exclusive remedy for injured employees. Va. Code § 65.2-307. This exclusivity provision limits common law recovery from employers and is not applicable to a common law action against an "other party." Va. Code

§ 65.2-309, *Fowler v. International Cleaning Service*, 260 Va. 421, 425, 537 S.E.2d 312 (2000) (citing *Stewart v. Bass Constr. Co.*, 223 Va. 363, 365, 288 S.E.2d 489, 490 (1982)).

"The issue whether a person is a statutory employee presents a mixed question of law and fact which must be resolved in light of the facts and circumstances of each case." *Cooke v. Skyline Swannanoa*, 226 Va. 154, 307 S.E.2d 246 (1983). Section 65.2-302(b) of the Code of Virginia, 1950 as amended, defines the situations in which an owner or contractor is a statutory employer and required to pay Workers' Compensation benefits. If a party is not a statutory employee under this section, then the exclusivity provision of § 65.2-307 does not apply. Section 65.2-302(a) and (b) states:

> (a) When any person (referred to in this section as "owner") undertakes to perform or execute any work which is a part of the trade, business, or occupation and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if that worker had been immediately employed by him.

> (b) When any person (referred to in this section as "contractor") contracts to perform or execute any work for another person which work or undertaking is not a part of the trade, business, or occupation of such other person and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under the subcontractor of the whole or any part of the work undertaken by such contractor, then the contractor shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if that worker had been immediately employed by him.

The normal work test and the subcontracted fraction exception articulated in *Shell Oil v. Leftwich*, 212 Va. 715, 187 S.E.2d 162 (1972), derive from these definitions of statutory employer.

> The test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction, or transportation service. The test (except in cases where the work is obviously a subcontracted fraction of a main

contract) is whether this indispensable activity is, in that business, *normally* carried on through employees rather than independent contractors.

*Id.* The normal work test is taken from subsection A of § 65.2-302, which requires that when an employer engages others to do work which he, the owner, would normally do, the owner is liable to provide for workers' compensation. *Shell* at 719. Likewise, subsection B gives rise to the subcontracted fraction exception where a contractor hires another to perform part of a contract for work not part of the work normally performed by the owner.

   The court in Cooke applied the subcontracted fraction exception. In that case, defendant Skyline executed a license agreement to operate a Holiday Inn hotel. As a part of the license agreement, Skyline promised to operate, lease or sublet a restaurant on the premises for the benefit of Holiday Inn patrons. Skyline subsequently executed a contract with Angus Barn to run the restaurant. An employee of the Angus Barn restaurant was injured on the premises and filed suit against Skyline. The court, in applying the subcontracted fraction test, determined that Angus Barn contracted to undertake an "'obviously subcontracted fraction' of Skyline's main agreement with Holiday Inn to provide a system of food, lodging, and other accommodations." *Id.* at 159. Skyline was determined to be the statutory employer of the injured party and thus exempt from suit under the Workers' Compensation Act.

   The facts in the case at hand are in line with Section B of § 65.2-302 in which a contractor, RIR, undertakes to perform duties under a contract that are not the trade, business, or occupation of the other person, NASCAR. The contractor, RIR, then contracts with another, Burns, to execute a part of the work undertaken by RIR in the contract with NASCAR. Thus, as in Cooke, the subcontracted fraction exception applies.

   RIR contracted with Burns to fulfill the duties to accommodate and control the public as stated in the contract between RIR and NASCAR. The contract specifically required that RIR, as promoter and conductor of the event, provide adequate facilities and personnel to accommodate and control the public during the event. As a part of fulfilling this contractual duty, RIR issued tickets, controlled the entry of the public into the facility, and controlled the conduct of the public once inside. In order to facilitate this goal, RIR used some of its own employees and hired Burns to provide additional employees. Burns was hired to help fulfill the duties of RIR as outlined in the main contract with NASCAR. As such, the RIR/Burns

contract falls under the subcontracted fraction exception to the normal work test. "There is no need to consider the [normal work] test, which comes into play only where an obvious subcontract is not first found." *Id.*

Plaintiff argues that Burns employees were providing security services wholly separate from the work normally done by RIR and thus could not be statutory employees of RIR. Further, plaintiff argues that she could not be engaged in the trade, business, or occupation of RIR because RIR is prohibited by law from performing security functions. Plaintiff bases this argument on the fact that Burns is a security company and plaintiff is a licensed security officer.

However, the licensing of Burns and plaintiff, as a licensed security company and officer respectively, is irrelevant to the job duties assigned by RIR. Plaintiff's duties consisted of taking tickets, checking credentials and coolers, and alerting her supervisor of disturbances. These duties at RIR did not require that plaintiff be a uniformed or licensed security officer. At no time was plaintiff responsible for settling disturbances or performing any security function that could not be performed by an untrained layperson. This is amply evidenced by the RIR employees, not licensed as security officers, who worked alongside plaintiff and other Burns employees in taking tickets and checking coolers. Plaintiff's argument further fails because, even assuming arguendo that she was performing a security function, the subcontracted fraction exception does not require that the work of the subcontractor be work normally performed by the employer. See Cooke.

Burns was hired to provide personnel to help fulfill the contractual duties of RIR in controlling and accommodating the public during the event. Plaintiff was performing a subcontracted fraction of the main contract between RIR and NASCAR. Plaintiff is therefore a statutory employee of RIR.

*Plaintiff as a Borrowed Servant*

RIR argues in the alternative that plaintiff is a borrowed servant of RIR and is thus barred from recovery by the exclusivity provision of the Workers' Compensation Act. The Court does not address this argument, as plaintiff is subject to the exclusivity provision as a subcontractor performing a fraction of the main RIR contract.

*BSI as a Co-Statutory Employee*

BSI argues that NASCAR is the statutory employer of both BSI and plaintiff, making plaintiff and BSI fellow statutory employees and barring

plaintiff's claim under the exclusivity provision of the Workers' Compensation Act. BSI asserts that both plaintiff and BSI are performing the trade, business, or occupation of NASCAR, "bringing racing to the public."

BSI argues that the "stranger to the work" test should be applied to determine if BSI is a statutory employee performing the trade, business, or occupation of NASCAR. That test is derived from the language of Code § 65.2-309(A), which recognizes the right of an injured worker to maintain a common law action for personal injury against an "other party." *Fowler.*

> It is immaterial whether the defendant was an independent contractor or a fellow-servant of the plaintiff [if BSI] was engaged in the business of the plaintiff's employer when her injuries were sustained. The purpose of the Workmen's Compensation Act is to limit recovery to all persons engaged in the business of the employer to compensation under the Act and to deny an injured person the right of recovery against any other person unless he is a stranger to the business.

*Rea, Adm'x v. Ford,* 198 Va. 712, 96 S.E.2d 92 (1957); *Floyd, Adm'x v. Mitchell,* 203 Va. 269, 123 S.E.2d 369 (1962); *Lucas v. Biller,* 204 Va. 309 (1963). In resolving the issue of whether BSI is a stranger to the work of NASCAR, a key consideration is whether BSI is "performing an essential part" of NASCAR's stated business. *Fowler* at 428.

The threshold analysis must resolve the nature of the work of NASCAR. BSI frames the work of NASCAR as "bringing racing events to the public." However, BSI's statement that NASCAR is in the business of "bringing racing events to the public" is overbroad. As stated in various agreements signed by NASCAR, "NASCAR sanctions and conducts stock car racing events." NASCAR's affiliated corporation, NASCAR Broadcasting, owns the exclusive rights to racing event images and sounds and contracts with other entities for temporary rights to those images in order to broadcast the events.

In the case at hand, BSI is specifically and exclusively engaged in supplying services and equipment to broadcast the Pontiac Excitement 400. There is no evidence that, at any time, NASCAR has undertaken the broadcasting or dissemination of the images of the racing events. NASCAR's retention of the rights to the images does not mean that NASCAR is in the business of broadcasting racing events. Moreover, NASCAR's creation and maintenance of an affiliated company to negotiate the provision of certain rights to other entities to produce and distribute telecasts of NASCAR races does not require the conclusion that broadcasting is a part of NASCAR's trade, business, or occupation.

The construction context in *Cinnamon v. I.B.M.*, 238 Va. 471, 384 S.E.2d 618 (1989), provides a helpful analogy. In that case, plaintiff was an employee of a subcontractor performing construction work under a main contract with IBM to build a facility. In a pleading in bar to the claim under the Workers' Compensation Act, defendant I.B.M. argued that it maintained a division within its corporate structure to "prepare plans and specifications, to approve subcontract awards, to issue change orders, and to monitor the progress of construction" and, as such, should be determined to be a statutory employer of the plaintiff. *Id.* The court disagreed stating, "[t]he existence of any such group, vested with such authority, is immaterial to the resolution of a statutory-employer question unless the owner has created and utilized that group to perform its own construction work as part of the conduct of its business operation." *Id.*

In the case at hand, NASCAR created a corporate affiliate to handle the dissemination of certain rights to broadcast racing events. There is no evidence that NASCAR ever performed its own broadcasting work as part of the conduct of its business operation. Not only does NASCAR not engage in broadcasting of racing events, but such broadcasting is not an essential part of NASCAR's trade, business, or occupation. The stated business purpose of NASCAR, to sanction and conduct racing events, could be accomplished without broadcasting the event. Certainly, broadcasting by BSI increases the opportunity for profit of NASCAR, but it is outside the scope of NASCAR's trade, business, or occupation. Because NASCAR does not itself broadcast racing events and broadcasting by BSI is not an essential part of NASCAR's business of sanctioning and conducting racing events, BSI is thus a stranger to the work of NASCAR.

Moreover, because BSI is a stranger to work of NASCAR and not engaged in NASCAR's trade, business, or occupation, BSI is not a statutory employee of NASCAR under the Workers' Compensation Act, nor a fellow statutory employee with plaintiff. There is no need to determine whether or not plaintiff is a statutory employee of NASCAR.

For the foregoing reasons, the court finds that plaintiff is a statutory employee of RIR. Plaintiff is therefore barred from recovery under her common law cause of action against RIR, and plaintiff's sole remedy is under the Workers' Compensation Act. As well, the court finds that BSI is not a fellow statutory employee with plaintiff. Plaintiff's recovery under her common law cause of action against BSI, Good, and Hamilton is not barred by the Workers' Compensation Act.

It is therefore ordered that the Special Plea in Bar based on the Workers' Compensation Act filed by defendant Richmond International Raceway, Inc., is sustained and the Special Plea in Bar based on the Workers' Compensation Act filed by defendants Broadcast Sports Technology Corporation, Scott R. Good, and Gary C. Hamilton is overruled. It is further ordered and declared that the action against defendant Richmond International Raceway, Inc., be dismissed with prejudice. The objections of the parties adversely affected by this order are noted.